MARY KEUPER, Appellant, *vs.* THE UNKNOWN HEIRS OF
WILLIAM E. METTE, Deceased, Appellees.

*Opinion filed April 23, 1909.*

1. DEEDS—*presumption where a deed to two grantees does not specify interest of each.* Where a deed is made to two or more grantees without designating the proportion each is to take, the law presumes they were intended to take equal shares, and they will be considered as tenants in common with equal interests until the contrary is shown.

2. TRUSTS—*burden of proving unexpressed trust is on party asserting it.* A person who claims a third interest, in trust, in property conveyed by deed to two other persons, without specifying the interest each is to take or mentioning the alleged trust, has the burden of proving the existence of the alleged trust, and the evidence thereof must be clear and satisfactory.

3. MASTERS IN CHANCERY—*a master's findings of fact from oral testimony are entitled to due weight.* While the report of a master in chancery does not have the same force as a verdict of a jury or the findings of the chancellor from oral testimony, yet where the master has seen the witnesses and observed their demeanor while testifying his findings of fact are entitled to due weight, particularly where no question as to the competency of the evidence is made and the findings are approved by the chancellor.

4. SAME—*objections to master's charges may be made on appeal—what charge excessive.* A charge of $200 for five and one-half days' time by the master in chancery in studying pleadings, hearing arguments, studying transcript of testimony, etc., is excessive, where the testimony was not voluminous and the questions involved were not intricate or difficult; and the fact that no objection to the charge was made in the court below does not preclude the raising of the objection in a court of review.

APPEAL from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

This suit was begun by appellant, Mary Keuper, and her husband, George Keuper, in the circuit court of Cook county, for the partition of certain real estate in the city of Chicago, described in the bill.

The bill alleges that one of the pieces of real estate therein described was conveyed to George Keuper and Wil-

liam E. Mette by warranty deed October 3, 1903, and the other piece was conveyed to the same parties by warranty deed March 2, 1906; that at the time the conveyances were so made the grantees and Mary Keuper were partners, doing business under the firm name and style of Mette & Keuper, each partner owning a one-third interest in the partnership, and that by virtue of said conveyances the said William E. Mette, George Keuper and Mary Keuper became the owners of said premises as tenants in common, each owning the undivided one-third thereof. The bill further alleges that William E. Mette died intestate May 28, 1906, and that his heirs were unknown to complainants. The unknown heirs of William E. Mette, his administrator, tenants and encumbrancers, were made parties defendant, and the bill prayed for partition in accordance with the interests of the parties as set out in the bill.

Maria E. Mette, George Mette and Katharina Sophia Bollheimer filed a joint and several answer to the bill. They admitted the death of William E. Mette; that in his lifetime he and George Keuper acquired title to the premises described in the bill, but denied that Mary Keuper was ever at any time a partner with her husband and William E. Mette, and denied that she acquired title to or any interest whatever in said premises except the inchoate right of dower in the interest of her husband therein. The answer alleges that respondent Maria E. Mette is the mother of William E. Mette; that respondent George Mette is his brother and Katharina Sophia Bollheimer his sister, and that they are the only heirs-at-law of said William E. Mette, of which George Keuper and Mary Keuper had at all times due and full notice. The answer avers that William E. Mette, at the time of his death, was the owner of the undivided one-half of said premises and George Keuper was the owner of the other undivided one-half; that by the death of said William E. Mette his interest in said real estate descended to respondents, his mother, brother and sister.

On the same day this answer was filed the same parties filed a cross-bill setting up title to the real estate as averred in the answer, praying partition in accordance with the interests of the parties as therein alleged, and for an accounting of the rents and profits received by George Keuper and Mary Keuper after the death of William E. Mette. George Keuper and Mary Keuper answered the cross-bill, alleging that they neither admitted nor denied its allegations but asked that strict proof thereof be made. After the parties made defendants as encumbrancers had filed their answers and replications had been filed, the cause was referred to a master in chancery, with instructions to take the testimony and report his conclusions thereon. Subsequently, upon leave given, the cross-bill was amended, alleging that Maria E. Mette, one of the original cross-complainants, had died since the filing of the cross-bill; that she left surviving her, as her only heirs-at-law, George Mette, her son, and Katharina Sophia Bollheimer, her daughter; that she died intestate and her interest in the lands sought to be partitioned descended to her heirs. Partition was prayed in accordance with the alleged rights and interests of the parties as set up in the amendment to the cross-bill.

The testimony was taken before the master, and on July 6, 1908, the master, after overruling objections filed by complainants in the original bill, filed his report recommending a decree dismissing the original bill and for partition upon the cross-bill. After the master's report was filed George Keuper died, and the cross-complainants filed a supplemental cross-bill alleging the death of George Keuper, testate; that by his last will and testament he devised all his property to his widow, Mary Keuper, and named her as executrix of said will; that said will had been duly admitted to probate and that Mary Keuper had duly qualified as executrix. Mary Keuper answered the supplemental cross-bill as an individual and also as executrix of the last will and testament of George Keuper, deceased, and an

agreement was entered into between the respective parties that the cause proceed to decree upon the evidence reported to the court. The objections of appellant filed before the master were ordered to stand as exceptions to the report in the circuit court. A decree was entered overruling the exceptions, approving the master's report, dismissing the original bill and ordering partition under the cross-bill. From that decree Mary Keuper, in her own right and as executrix of the will of George Keuper, has appealed to this court.

KRUSE & PEDEN, and WELDON WEBSTER, for appellant:

Whether persons are partners *inter se* or *quoad* third parties must be established by facts, by the acts of the parties, or by circumstantial evidence which induces the belief of a partnership. The question turns upon the assent of the persons to be charged, and not upon general repute. *Bowen* v. *Rutherford,* 60 Ill. 41; *Stephenson* v. *McClintock,* 141 id. 604; 38 Am. Dec. 482, note; 22 Am. St. Rep. 761, note; 13 L. R. A. 370, note.

It is not essential to the proof of a condition establishing a resulting trust that a co-partnership between the parties be shown. Contribution of labor in the earning of money in the purchase fund is sufficient, or "if two or more advance the price and the title is taken in the name of one of them a trust will result in favor of the other for an undivided share of the property in proportion to his share of the purchase price paid." *Reynolds* v. *Sumner,* 126 Ill. 69; *Smith* v. *Smith,* 85 id. 189; *Mason* v. *Showalter,* 85 id. 133; *Loften* v. *Witboard,* 92 id. 461.

A trust continues after being created and cannot be barred except by the Statute of Limitations, or by open, notorious and adverse possession by the *cestui que trust* where the trust is openly disavowed. *Reynolds* v. *Sumner,* 126 Ill. 71; *Meacham* v. *Bunting,* 156 id. 594; *Farwell* v. *Telegraph Co.* 161 id. 596.

FRANK L. HUME, WILLIAM MANNHARDT, and R. S. Douglas, for appellees:

Evidence to sustain a resulting trust is always received with great caution. *Mahoney* v. *Mahoney*, 65 Ill. 406; *Corder* v. *Corder*, 124 id. 229.

Evidence to establish a resulting trust must be clear, strong, unequivocal and unmistakable. *Pickler* v. *Pickler*, 180 Ill. 168; *Strong* v. *Messinger*, 148 id. 431; *Schneider* v. *Becker*, 125 id. 107; *Heneke* v. *Floring*, 114 id. 554; *Bank* v. *Beesley*, 159 id. 120; *Towle* v. *Wadsworth*, 147 id. 80.

The findings of the master, sustained by the trial court, will not be disturbed, on appeal, unless the evidence is clearly and manifestly against the findings. *Williams* v. *Lindblom*, 163 Ill. 346; *Lehman* v. *Rothbarth*, 159 id. 270; *Siegel* v. *Andrews & Co.* 181 id. 350.

Mr. JUSTICE FARMER delivered the opinion of the court:

William E. Mette was a single man, and in 1896 he and the Keupers were without means. In that year Mette and George Keuper borrowed $100 from a brother of Mary Keuper and engaged in the saloon business. They ran a lunch stand in connection with the saloon, and Mrs. Keuper did the cooking, helped to tend bar and handled the money. The business not proving profitable, after about one year they moved to another location in South Chicago, where they conducted a saloon and lunch stand until February, 1906. Mrs. Keuper's name never appeared in connection with the business but it was conducted in the name of Mette & Keuper. The money invested in the real estate sought to be partitioned was made by the parties in the conduct of their saloon and lunch counter business. Mary Keuper claims she was a full partner with her husband and Mette during all the time the business was conducted in the name of Mette & Keuper; that one-third of the money invested in the real estate was hers, and that her husband and Mette

held the title to a one-third interest in the premises in trust
for her. This was the contested question at the trial. The
evidence upon this question was conflicting. Four daugh-
ters of Mary Keuper, her brother, a cousin, and a lawyer
who had transacted business for Mette & Keuper and as-
sisted them in investing their money, testified that William
E. Mette during his lifetime stated that Mrs. Keuper was
a partner with himself and her husband and owned a one-
third interest in the partnership. Appellees offered in evi-
dence three leases made by Mette & Keuper for the premises
occupied by them in their saloon business in South Chicago.
Each of the leases was made to "William E. Mette and
George Keuper, (firm of Mette & Keuper,)" and two of
them were signed "W. E. Mette, George Keuper," and one
of them was signed "William E. Mette, George Keuper."
They also offered in evidence the business card of the par-
ties. Near the top of the left-hand corner was the name
"William E. Mette" and at the right-hand corner "George
Keuper." Below these names was "Mette & Keuper.—
Wines, Liquors and Cigars.—No. 264 92nd Street." The
appellees also offered in evidence a bill of sale made and
signed by William E. Mette and George Keuper in Febru-
ary, 1906, conveying and transferring to Fred Sand and
Jacob Ruf their saloon property, stock of wines and liquors,
cigars, tobaccos and other property used in the conduct of
the business. In none of these documents was Mrs. Keu-
per's name mentioned or referred to. The Fred Sand men-
tioned in the bill of sale testified he was the representative
of the Conrad Seip Brewing Company, and as such had
daily transactions with Mette & Keuper during all the time
they were located in South Chicago, nearly ten years. He
never heard Mrs. Keuper had any interest in the business.

The foregoing is the substance of the most material tes-
timony on both sides, aside from the fact that the deeds to
the property in controversy were made to William E. Mette
and George Keuper.

Appellant contends that the burden of proof was upon the appellees to show what particular interest each of the grantees in those deeds took. This is a misapprehension. Where a conveyance is made to two or more parties, without designating the proportion each is to take, the law presumes that they were intended to take equal shares, and they will be considered tenants in common with equal interests. The burden was upon appellant to prove that one-third of the property was bought with the money of Mary Keuper and the title taken and held in trust for her. The proof in such cases must be clear and satisfactory. In *Strong* v. *Messinger,* 148 Ill. 431, this court said (p. 433): "The rule in this State, as elsewhere, in such cases is well established. In Pomeroy's Equity Jurisprudence (sec. 1040) it is said: 'Where the trust does not appear on the face of the deed or other instrument of transfer, a resort to parol evidence is indispensable. It is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of payment by the alleged beneficiary beyond a doubt. Where the payment of a part, only, is claimed, the evidence must show, in the same clear manner, the exact portion of the whole price which was paid.' In *Enos* v. *Hunter,* 4 Gilm. 212, it was held: 'As a general rule, the policy of the law requires that everything which may affect the title to real estate shall be in writing,—that nothing shall be left to the frailty of human memory or as a temptation to perjury; and whenever this policy of the law has been broken in upon and parol evidence admitted, the courts have been ever careful to examine into every circumstance which may affect the probability of the alleged claim, as the lapse of time, the means of knowledge and circumstances of the witness; and it will not grant the relief sought where the claim has been allowed to lie dormant for an unreasonable length of time or where the evidence is not very clear in support of the alleged right, especially where no claim has

been set up during the lifetime of the trustee but is raked up and charged against his heirs, who may not be supposed to know anything about it or be able to defend it, as their ancestor might have done.' " See, also, *Pickler* v. *Pickler*, 180 Ill. 168; *Towle* v. *Wadsworth*, 147 id. 80; *Corder* v. *Corder*, 124 id. 229; *Mahoney* v. *Mahoney*, 65 id. 406.

The master saw the witnesses and heard them testify. In his report he states that the testimony on behalf of appellant was of an unsatisfactory and unconvincing character, and sets out at some length his reasons for so stating. The report of a master in this State is not given the same effect as the verdict of a jury in a case tried by a jury nor the same weight that is given the findings of a chancellor who sees the witnesses and hears them testify, but in a case where the master has seen the witnesses and observed their manner and demeanor while testifying, the finding of facts made by him is entitled to due weight. (*Fairbury Union Agricultural Board* v. *Holly*, 169 Ill. 9; *Larson* v. *Glos*, 235 id. 584.) No question is made here of the master's finding being based upon incompetent evidence. In that state of the case, considered in connection with the master's opportunities of seeing the witnesses and hearing them testify, his report is entitled to some weight. The chancellor agreed with the master and approved his report, and we not only cannot say the decree is contrary to the evidence, but we cannot say it was not supported by the weight of the testimony. We think the evidence shows that Mrs. Keuper's services were valuable and contributed to the earning of the money invested in the property; but this, alone, is not sufficient to make her a partner in the business, and we are of opinion the evidence was insufficient to authorize a finding that Mette and her husband held one-third of the property in trust for her.

One of the errors assigned is the allowance of $233.75 for master's fees, taxing them as costs and ordering them

239—38

paid by appellant. The master's charges were itemized by him as follows:

Taking evidence: 90 folios at 37½ cents............... $ 33 75
Studying pleadings and exhibits, one-half day; hearing arguments on questions of admissibility of evidence and ruling thereon, one-half day; hearing oral arguments on merits, one-half day; studying transcript of testimony, one day; examining authorities cited in briefs of counsel, one day; formulating report, one and one-half days; considering objections to report, one-half day; total, five and one-half days.......... 200 00

Total ...................... ................. $233 75

We think the charge of $200 for five and one-half days' time was excessive and that the court erred in allowing said item in full. The testimony was not voluminous and the questions involved were not intricate or difficult. We have heretofore expressed our views upon the reasonableness of fees to be allowed masters in chancery. (*Manowsky* v. *Stephan,* 233 Ill. 409; *Wirzbicky* v. *Dranicki,* 235 id. 106.) We are of opinion $100 is reasonable and sufficient compensation for the services of the master for considering the evidence, arguments of counsel and preparing his report, and the court erred in allowing a greater sum for those services.

The appellees contend that no objection to the master's charge for fees was made in the court below and therefore the question cannot be raised in this court upon this appeal. This question was decided otherwise in *Wirzbicky* v. *Dranicki, supra.*

The decree of the circuit court in all other respects was correct, but for the error in taxing the master's fees at $233.75 it is reversed and the cause remanded, with directions to tax the master's fees at $133.75 and in all other respects re-enter the same decree.

*Reversed in part and remanded, with directions.*