## BENNETT, RESPONDENT, *v.* QUINLAN, APPELLANT.

(No. 3,237.)

(Submitted March 21, 1913.   Decided April 15, 1913.)

[131 Pac. 1067.]

*Water Rights—Adverse Claims—Complaint—Sufficiency—Res Adjudicata — Parol Evidence—Presumptions—Parties—Statutes.*

Water Rights—Adverse Claims—Complaint—Sufficiency.

1.   The complaint in an action to determine conflicting claims to a water right, alleging that plaintiff was the owner of an undivided one-half interest in said right and that defendant claimed an interest therein adverse to that of plaintiff, but that such claim was without right, was sufficient to put the defendant upon his defense.

Same—Determination of Rights of Defendants *Inter Sese—Res Adjudicata*—Presumptions—Parties—Statutes.

2.   The provision of section 4852, Revised Codes, that in a water right suit the plaintiff may make any and all persons who have diverted water from the stream in controversy parties, and the court may in one judgment settle the rights of all of them in one decree, being permissive only, there was no presumption that the respective interests of joint owners in an undivided water right had been adjudicated *inter sese* in a suit in which their predecessors were codefendants, in the absence of a showing to that effect upon the face of the decree or the judgment-roll.

Same—*Res Adjudicata*—Decree—Parol Evidence—Admissibility.

3.   Where, because of the loss or destruction of the record in a water right suit (with the exception of the findings and decree), it was impossible to determine whether the respective rights of two codefendants had been adjudicated *inter sese*, the trial court in a subsequent action between their successors properly admitted parol evidence to determine what rights had been determined in such action.

Same—Decree—Joint Interest—Presumptions.

4.   The presumption, if any, that where parties were by decree awarded a joint interest, without specifically fixing the extent of the interest of each, they were each entitled to an equal share therein, was not conclusive, as between their successors in interest who had full knowledge of the extent of the rights of their predecessors, but *prima facie* only.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by James H. Bennett against H. J. Quinlan.   From a judgment for plaintiff and an order denying him a new trial, defendant appeals.   Affirmed.

*Mr. J. H. Duffy,* and *Mr. W. A. Pennington,* for Appellant, submitted a brief and argued the cause orally.

*Mr. S. P. Wilson* and *Mr. John H. Tolan,* for Respondent, submitted a brief and argued the cause orally.

A matter will not be considered as *res adjudicata* unless it appears from the judgment or from the judgment-roll to have been adjudicated. (*Sloan* v. *Byers,* 37 Mont. 503, 97 Pac. 855; *McNinch* v. *Crawford,* 30 Mont. 297, 76 Pac. 698; *Whited* v. *Cavin et al.,* 55 Or. 98, 105 Pac. 396; Farnham on Water, p. 21; *Hough* v. *Porter,* 51 Or. 318, 95 Pac. 732, 98 Pac. 1083, 102 Pac. 728.) He who claims matter to have been adjudicated has the burden of proving such adjudication. (*Kleinschmidt* v. *Binzel,* 14 Mont. 31, 43 Am. St. Rep. 604, 35 Pac. 460; *Packett* v. *Sickles,* 5 Wall. (U. S.) 592, 18 L. Ed. 550; *Russel* v. *Place,* 94 U. S. 608, 24 L. Ed. 214; *Glass* v. *Basin & Bay State Min. Co.,* 34 Mont. 88, 85 Pac. 746; *Rudd* v. *Cornell,* 171 N. Y. 114, 63 N. E. 823; *Reynolds* v. *Aetna Life Ins. Co.,* 160 N. Y. 635, 55 N. E. 305; *State* v. *Kaemmerling,* 83 Kan. 383, 111 Pac. 443; *Savage* v. *City of Tacoma,* 61 Wash. 1, 112 Pac. 78; *Evans* v. *Swan,* 38 Colo. 92, 88 Pac. 149; *O'Neil* v. *Fort Lyon Canal Co.,* 39 Colo. 487, 90 Pac. 849; *Waterhouse* v. *Levine,* 182 Mass. 407, 65 N. E. 822; *Water Commrs.* v. *Cramer,* 61 N. J. L. 270, 68 Am. St. Rep. 705, 39 Atl. 671; *Aetna Life Ins. Co.* v. *Board of Commrs.,* 117 Fed. 82, 54 C. C. A. 468; *Grand Valley Irr. Co.* v. *Fruita Imp. Co.,* 37 Colo. 483, 86 Pac. 324; *Bond* v. *Markstrum,* 102 Mich. 11, 60 N. W. 282; *In re Wilson's Estate,* 147 Cal. 108, 81 Pac. 313; *Keagy* v. *Wellington Nat. Bank,* 12 Okl. 33, 69 Pac. 811; *Draper et al.* v. *Medlock,* 122 Ga. 234, 2 Ann. Cas. 650, 69 L. R. A. 483, 50 S. E. 113; *Ortiz* v. *First Nat. Bank of Las Vegas,* 12 N. M. 519, 78 Pac. 529; *Harrison* v. *Remington Paper Co.,* 140 Fed. 385, 72 C. C. A. 405, 3 L. R. A. (n. s.) 954; *Beronio Vesven Co.* v. *L. Co.,* 129 Cal. 323, 79 Am. St. Rep. 118, 61 Pac. 958; *Wiltrout* v. *Showers,* 82 Neb. 777, 118 N. W. 1180; *Logan* v. *Trayser,* 77 Wis. 579, 46 N. W. 877; *Jones* v. *Vert,* 121 Ind. 140, 16 Am. St. Rep. 379, 22 N. E. 882; *Koelsch* v. *Mixer,* 52 Ohio St. 207, 39 N. E. 417; *Hoffman* v.

*Silverthorn,* 137 Mich. 60, 100 N. W. 183; *Sanford* v. *King,* 19 S. D. 334, 103 N. W. 28; 23 Cyc 1279, 1532.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to have determined the extent of the respective interests of the plaintiff and defendant in a water right acquired by their predecessors by appropriation for agricultural purposes from Race Track creek, formerly in Deer Lodge, now in Powell county. The original appropriation was small, and was made by John Duncan in 1871. It was enlarged to 400 inches by Duncan and L. Strickland in 1872; the diversion being completed on June 5 of that year. They each held a possessory right upon the public lands lying along the south side of the stream. They made the appropriation jointly, and constructed a ditch which they used in common to a point at which a change in the direction became necessary in order that each might convey the amount of water needed to his own lands. From this point each constructed his own ditch. Title to the lands held by them, respectively, was subsequently acquired by them or their respective successors by patent directly from the federal government or by deed from the Northern Pacific Railroad Company. In 1881 one Magone succeeded Strickland in his right to a portion of the lands then held by him, and to his entire interest in the water right and ditch. Magone subsequently acquired other lands. On April 1, 1910, the plaintiff purchased substantially all of his holdings, including his interest in the water right described in the conveyance as an undivided one-half interest. In 1884 John and Henry Quinlan succeeded by purchase to the rights and interests of Duncan, including that held by him in the ditch and water right. The defendant, a son of Henry Quinlan, thereafter became, and when this action was brought and tried was, the owner of the Duncan interests by conveyance from his father and John Quinlan. In 1887 Magone and the two Quinlans, desiring to cultivate portions of their land lying upon the slope above the Strickland-Duncan ditch, jointly constructed a second ditch from a point on the

creek about three and one-half miles above the head of the Strickland-Duncan ditch. They used this in common, just as they did the old ditch, down to a point at which it became necessary for each to construct a branch for his own use. The diversion through this ditch was not, nor was it intended to be, an additional appropriation. The water diverted through it was used under the old right. In 1890 an action was brought by one P. H. Meagher, who owned lands lying on Race Track creek near the Magone and Quinlan lands, and also claimed prior right to the use of water from the creek, to have the relative priorities of all the rights appropriated from it settled and determined. This case is referred to in the pleadings and evidence under the title of *Meagher* v. *Glover et al.* All the claimants of rights from the creek were made parties defendant, including Magone and the Quinlans. The court found the dates and amounts of the respective appropriations, and on July 22, 1890, rendered a decree determining the rights and priorities of all of the parties accordingly. With reference to the Magone-Quinlan right the court found: "(1) That the said defendants in the year 1871 appropriated of the waters of Race Track creek, described in plaintiff's complaint, 400 inches thereof, measured as provided by the statutes," *etc.* "(2) That said water was appropriated by means of a ditch of sufficient capacity to convey said amount of water." The decree, after reciting that the cause was heard upon the complaint, the separate answers of the several defendants, and "the stipulation on file herein," adjudged that "the plaintiff and each of the defendants are the owners and entitled to the use of the waters of Race Track creek, * * * said waters to be diverted from said creek * * * in the order and manner hereinafter named: * * * (8) John Quinlan, Henry Quinlan, and Ed Magone, four hundred inches. * * * That the water be measured according to the statutes of the state of Montana for the measurement of water." It further ordered and adjudged "that the plaintiff and each of the defendants, in the order named, have the right to the use of the waters of Race Track creek for the purposes of irrigation, domestic use, and for watering stock. That the defendants and each of them

are hereby enjoined and restrained forever from diverting or interfering with the waters of said creek, except that each of said defendants may in the order named make reasonable use thereof in the amount named and for the purposes mentioned, and until each defendant has used the water in the manner and amount mentioned [and] each other defendant is restrained from using or diverting the same.''

The complaint contains two counts. In the first the plaintiff bases his claim to an undivided one-half interest upon the decree. He alleges that defendant claims adversely to him, and under such claim is interfering with the use and enjoyment of his right. In the second count he alleges title and right to the use of an undivided one-half interest, and an adverse claim by defendant which is without right. The prayer is for a decree declaring that the plaintiff is the owner of an undivided one-half interest, and that defendant's adverse claim be adjudged to be without foundation. In his answer to the first count defendant admits the existence and validity of the decree; but denies that plaintiff by the terms thereof is entitled to an undivided half interest in the amount awarded therein to the predecessors of the plaintiff and defendant, or any other or greater interest than one-third, or 133⅓ inches. He denies all of the allegations of the second count, except that he asserts an interest adverse to plaintiff to the extent of the difference between a one-half and a one-third interest, and pleads the decree as an adjudication that Magone and the two Quinlans were each the owner and entitled to a one-third interest, and alleges that defendant is estopped thereby to claim any other or greater interest. There was issue by reply.

The substantive question presented to the district court for determination was whether the decree of July 22, 1890, was to be taken as a conclusive adjudication of the extent of the rights of Magone and the two Quinlans *inter sese,* and hence those of plaintiff and defendant, their successors, or whether it should be construed by the aid of extrinsic evidence and their rights declared accordingly. The court held that, since the decree does not upon its face appear to have adjudicated the rights of

these parties and such adjudication was not actually or necessarily included in it, their respective interests were to be ascertained from evidence of the facts as they actually existed when the right was initiated and when the decree was rendered. Accordingly, over objection of defendant, it heard the evidence, found in favor of plaintiff, and adjudged him to be the owner of an undivided one-half interest. The defendant has appealed from the decree and an order denying him a new trial.

The integrity of the decree is assailed on the grounds (1) that the complaint does not state facts sufficient to constitute a cause of action; and (2) that the former decree was an adjudication of the interests of the parties *inter sese,* and that the court erred in not accepting it as such. The first contention may be dismissed with the remark that, whatever may be its merits when referred to the first count in the complaint, it must be overruled as to the second count. As appears from the foregoing statement, it is alleged therein that the plaintiff is [1] the owner of the property described, that defendant claims an interest therein adverse to that of plaintiff, and that such claim is without right. This is sufficient to put the defendant upon his defense. (*Montana Ore Pur. Co.* v. *Boston & Mont. C. etc. Co.,* 27 Mont. 288, 70 Pac. 1114; *Merk* v. *Bowery Min. Co.,* 31 Mont. 298, 78 Pac. 519; *Castro* v. *Barry,* 79 Cal. 443, 21 Pac. 946; 17 Ency. Pl. & Pr. 326; 2 Pomeroy's Equitable Remedies, sec. 741.)

The second contention is equally without merit. Section 7917, Revised Codes, provides: "That only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually and necessarily included therein or necessary thereto." Section 4852 is in part [2] as follows: "In any action hereafter commenced for the protection of rights acquired to water under the laws of this state, the plaintiff may make any or all persons who have diverted water from the same stream or source parties to such action, and the court may in one judgment settle the relative

priorities and rights of all the parties to such action." If this latter provision were to be taken as mandatory, the defendant might well insist that the decree in the case of *Meagher* v. *Glover* was to be accepted, not only as an adjudication of the amounts and priorities of the different appropriations mentioned therein, but also of the rights of joint owners in any appropriation *inter sese.* But, as pointed out in *Sloan et al.* v. *Byers et al.*, 37 Mont. 503, 97 Pac. 855, the terms of this provision are permissive only. Therefore, though the rights of all the parties—whether arising out of joint or independent appropriations—may be adjudicated in a single decree under the rule declared by section 7917, *supra,* no presumption attaches that any such adjudication has in fact been had, unless the fact appears upon the face of the decree itself, or, in any event, from the judgment-roll. True, it was said in *McNinch* v. *Crawford,* 30 Mont. 297, 76 Pac. 698, that in an action brought under section 4852, *supra,* each party is an antagonist of every other party. This statement was made with reference to the condition of the issues presented in that case and is to be so taken and understood, and not to mean that in such an action every possible right touching the subject matter in controversy is to be presumed to have been adjudicated by the final decree, whether it was put in issue or not, or whether it was necessarily involved in the issues tried. As was suggested in *Sloan et al.* v. *Byers et al., supra,* it is doubtful whether the legislature has power to compel parties to litigate their rights when neither questions that of the other nor has committed a wrong with reference to it, for which the other is demanding redress. Hence in *Sloan et al.* v. *Byers et al.,* inasmuch as neither the decree nor the judgment-roll in a former controversy over the water in the same stream showed that the extent of the interests of joint owners *inter sese* in the particular right in question had in fact been adjudicated, it was held that the decree in the former action did not estop the parties thereto from having these rights adjudicated in a second action. In that case the entire record in the former action was before the court at the hearing. In the case at bar it was shown that the record

in the case of *Meagher* v. *Glover,* except the findings and decree, [3] had been lost or destroyed. It cannot be determined from an examination of these remnants of the record that Magone and the Quinlans interpleaded each other, or that there was any controversy between them as to the extent of their rights *inter sese.* Indeed, so far as they furnished a basis for any inference, it is that the court adjudicated to them a common right in the ditch and water both, without regard to the extent of their individual interests. The findings refer to the right as a single entity—the property of all of these defendants. The decree refers to it in the same way; whereas, if they had interpleaded each other and had submitted their rights to the court for adjudication, the decree would undoubtedly have said so in unmistakable terms. It is true that the introductory recitals in the decree state that the cause was heard upon the complaint, the separate answers of the defendants, and "the stipulation on file herein," but when we note that in the enumeration of the several rights adjudicated—thirty-five in all—several of them were jointly awarded to two or more persons, we do not think that statement imports into the adjudging portion of the decree any greater certainty. The court, having found itself thus left without evidence in the record to enable it to ascertain the issues made and tried, properly refused to accept the decree as conclusive, and held that recourse must be had to parol evidence to ascertain what in fact had been adjudicated by it, and that, if the Magone and Quinlan rights had not been determined, it was incumbent upon it to determine them. (*Kleinschmidt* v. *Binzel,* 14 Mont. 31, 43 Am. St. Rep. 604, 35 Pac. 460.)

In *Russell* v. *Place,* 94 U. S. 608, 24 L. Ed. 214, in speaking of the admissibility of parol evidence to show what issues had been tried in a former controversy, the court said: "It is undoubtedly settled law that a judgment of a court of competent jurisdiction, upon a question directly involved in one suit, is conclusive as to that question in another suit between the same parties. But to this operation of the judgment it must appear, either upon the face of the record or be shown by extrinsic evidence, that

the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record, as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, the whole subject matter of the action will be at large, and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined. To apply the judgment, and give effect to the adjudications actually made, when the record leaves the matter in doubt, such evidence is admissible.'' This case is cited, with others to the same effect, in *Kleinschmidt* v. *Binzel,* and the above paragraph is therein quoted with approval.

There was scarcely any conflict in the evidence as to what the facts were, either as to the issues tried in *Meagher* v. *Glover,* or as to what the relative rights of Magone and the Quinlans *inter sese* were, and hence what are those of the plaintiff and the defendant. The court found that Magone and the Quinlans made common cause as against all the other parties, but that as among themselves there was no controversy whatever. There is no complaint, nor is there any foundation for any, that the findings are not supported by the evidence.

Counsel say in their brief that, inasmuch as the decree in *Meagher* v. *Glover* adjudged the right to Magone and the Quinlans jointly, the legal presumption attaches that their shares [4] were equal, and that, since the defendant acquired the Quinlan interests by purchase, the presumption is conclusive that he thus became the owner of a two-thirds interest. They invoke the rule recognized generally in this country that when two or more parties acquire an estate by the same act, deed, or devise, and no indication is therein made to the contrary, they are presumed to hold as tenants in common (Washburn on Real Property, sec. 878), and insist that the decree should, for this reason, have been accepted as conclusive. As we have already pointed out, the decree does not on its face purport

to adjudicate the rights of the parties *inter sese.* This made it incumbent upon the district court to ascertain what issues were determined, and to determine such as it appeared were not within the issues tried in that case. The title of the parties did not vest under the decree in any sense of the term "vest." The question as to the extent of the interests of the parties was thus left at large, to be determined by reference to the evidence showing the inception of the interests, *viz.,* the original appropriation, and the rights claimed and conceded by each of the joint owners up to the date of the decree and subsequent to that time. The court found, in effect, that the extent of the interest acquired by the predecessor of plaintiff under the original appropriation was an undivided one-half. There is no conflict in the evidence on this point. While the findings are not specific as to what the course of conduct observed by the parties subsequent to the date of the appropriation was, the evidence is clear that Duncan and Strickland each claimed for himself, and conceded to the other, a one-half interest; that Magone on the one hand, and the Quinlans on the other, after they had acquired the interests of these appropriators, made the same claims and concessions, and that no claim was made by anyone to the contrary until long after the decree was rendered. Indeed, neither Henry nor John Quinlan ever questioned the extent of Magone's right. It was first seriously questioned by the defendant after he had succeeded to the Quinlan interests, and then only after the plaintiff had acquired the Magone interest.

Let it be assumed, however, that the decree furnished a basis for the presumption that Magone and the Quinlans were entitled to a one-third interest each. As between them, this presumption was *prima facie* only, and could be overturned by evidence showing the facts. (*Shiels* v. *Stark,* 14 Ga. 429; *Edwards* v. *Edwards,* 39 Pa. 369; 38 Cyc. 74.) Though a different rule might apply to persons who purchased from them without notice of the actual condition of the title, and on this point we express no opinion, the evidence shows that both the plaintiff and the defendant at the date of the conveyances un-

der which they hold had full knowledge of the extent of the rights of their predecessors. Therefore, the presumption was only *prima facie* as to them.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Holloway and Mr. Justice Sanner concur.

Rehearing denied May 5, 1913.