### KING COUNTY, WASH., v. SEATTLE SCHOOL DIST. NO. 1.

(Circuit Court of Appeals, Ninth Circuit.  January 9, 1922.)

No. 3718.

1. **Schools and school districts ⬥114—District may maintain suit to recover its proportion of a fund held in trust by the county for school purposes.**

   A district, made by statute a body corporate, with power to sue and be sued, and charged with administration of its schools and the funds appropriated therefor, may maintain a suit to recover its proportionate share of a fund held in trust by the county for the benefit of the public schools therein, and which the county is diverting to other purposes.

2. **Attorney General ⬥7—Schools and school districts ⬥118—Attorney General represents public only where community rights involved, and is not proper party to bring suit to enforce rights of school district against county.**

   It is the province of an Attorney General to represent the general public, where the rights of the entire community are involved, and not those only of a limited portion thereof, and the Attorney General of a state is not the proper party to bring a suit against a county to enforce rights of a school district, which is under the statute a body corporate, with power to sue and be sued.

3. **Woods and forests ⬥8—Government held not interested in suit by school district against county concerning fund received from forest reserve.**

   Where money received from a forest reserve has been paid by the Treasurer of the United States to a state "for the benefit of the public schools and the public roads of the county or counties in which the forest reserve is situated," as required by Act May 23, 1908 (Comp. St. § 5149), and by the state to a county in trust for the same purpose, as provided by a state statute, a controversy between the county and a school district over the administration of the trust fund is not one between the general government and the state, but a matter of local concern only.

4. **Courts ⬥284—Federal court of equity has jurisdiction of a suit involving construction of a federal statute creating a trust fund.**

   A suit by a school district against the county to enforce its right to a share of a fund paid by the United States to a state from the receipts of a forest reserve, under Act May 23, 1908 (Comp. St. § 5149), "for the benefit of the public schools and public roads" of the county, and paid by the state to the county, under a state statute for the same purpose, is within the jurisdiction of a federal court of equity, as involving the construction of a trust created by the federal statute.

5. **Woods and forests ⬥8—Funds from reserves given state for roads and schools to be divided equally.**

   Act May 23, 1908 (Comp. St. § 5149), providing that one-fourth of the receipts from a forest reserve shall be paid to the state, to be expended "for the benefit of the public schools and public roads of the county or counties in which the forest reserve is situated," *held* to require the apportionment of the fund equally between the schools and roads of the county.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the District of Washington; Jeremiah Neterer, Judge.

Suit in equity by Seattle School District No. 1 against King County, Wash. Decree for complainant, and defendant appeals. Affirmed.

Malcolm Douglas and Howard A. Hanson, both of Seattle, Wash., for appellant.

Henry W. Pennock, of Seattle, Wash., for appellee.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. The controversy here grows out of the following situation:

By acts of Congress of March 4, 1907 (34 Stat. 1270), and May 23, 1908 (35 Stat. 260 [Comp. St. § 5149]), it is provided that 25 per cent. of all money received from each forest reserve shall be paid by the Secretary of the Treasury to the state or territory in which the reserve is situated, "to be expended as the state or territorial Legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which the forest reserve is situated." By an act of the Washington Legislature (Laws 1907, c. 185, p. 406), the State Treasurer is directed to turn over to the county treasurers the amounts of money belonging to the respective counties. By section 2 it is provided:

"County commissioners of the respective counties to which the money is distributed are hereby authorized and directed to expend said money for the benefit of the public schools and public roads thereof, and not otherwise."

For the years 1909 to 1915, inclusive, the county commissioners of King county, Wash., directed the county treasurer to apportion the entire amount of such funds coming into his hands to the road and bridge fund, to the exclusion of the county school fund, and the county treasurer acted accordingly. Of the acts of the commissioners and the county treasurer in this regard the plaintiff complains, and claims that the funds should have been apportioned to the road and county school funds in equal amounts. The sufficiency of the bill of complaint was challenged by a motion to dismiss. This was denied by the court below, resulting in a decree for plaintiff.

[1] It may be premised that there is no apparent controversy touching the authority of the school district to sue and be sued. Indeed, by local statute, school districts in the state are constituted bodies corporate, possessing all the usual powers of a corporation for public purposes, and, among others, in name and style, to sue and be sued. Section 4423, 1 Remington's 1915 Codes and Statutes of Washington. Such school districts are regarded as mere arms of the state for the administration of its school system, and it is said that practically all of their functions are therefore governmental. Howard v. Tacoma School District No. 10, 88 Wash. 167, 170, 152 Pac. 1004, Ann. Cas. 1917D, 794. The districts, however, are charged with the administration of the school funds intrusted to them by state authority, or to which they are entitled.

Much controversy has developed in the argument and in the briefs of counsel touching the particular style of trust relations existing between the parties, and out of this spring the questions whether the suit was properly instituted and whether a court of equity, and this, a federal court, have jurisdiction of the subject-matter of the controversy. It would be of little avail to discuss the distinction between private and charitable trusts. The one here involved cannot be strictly classed as either. It is a trust, public in its nature, but to be dealt with on like legal principles as pertain to private trusts.

The general government has, by grant, apportioned certain funds to the several states or territories in which forest reserves are situated, to be expended as the state or territorial Legislature may prescribe, for the benefit of the public schools and public roads of the county or counties in which the forest reserve is situated. These funds are transmitted to the state or territory entitled to them, and, under the direction of the state Legislature of Washington, are turned over to the treasurers of the respective counties to which they are apportionable. The counties thereby become the trustees of the funds, acting through their treasurers, to be dispensed as directed under the grant. The local public—that is, the inhabitants of the school district—constitute the ultimate beneficiaries; but, in so far as the school districts are concerned, they are the immediate cestuis que trustent for the expenditure of the funds to which they are entitled. Furthermore, they are entitled, under the law, to have the money paid to them for their administration. Now, the school districts being constituted bodies corporate, with power to sue and to be sued, what need is there for the interposition of the Attorney General to enable them to maintain suit to recover the funds from the trustee, so that they may administer them for the public benefit, as the law requires them to do?

[2] In a general sense, if the Attorney General possesses any peculiar province in this country, it is to protect and safeguard the rights of the general public, where there is no one in particular suffering injury more than another. But, as is said by the court in People v. Ingersoll, 58 N. Y. 14, 17 Am. Rep. 178:

"Doubtless the prerogatives of the crown, except as affected by constitutional limitations, exist in the people as sovereign, but to what extent the exercise of this prerogative is committed to the public officials, either by the Legislature or by the common law, is a question worthy of grave consideration, and not to be lightly decided, and should only be determined when necessary to a judgment and decision. * * * If there were no other remedy for a great wrong, and public justice and individual rights were likely to suffer for want of a prosecutor capable of pursuing the wrongdoer and redressing the wrong, the courts would struggle hard to find authority for the Attorney General to intervene in the name of the people."

But another principle is involved, which is that the function of the Attorney General is to represent the public, the entire community, and not a limited portion thereof. An English case of much analogy to the present, and illustrative of the principle, is cited, namely, Attorney General v. Garner and Another, [1907] 2 K. B. 480. The suit was one instituted by the Attorney General, on the relation of the Spalding Union rural district council, to restrain defendants from depastur-

ing certain lands. It was found that the parish council was the owner of the right of property as trustee for the parishioners, and not the rural district council, the relator, and the court says:

"The question therefore arises whether in these circumstances the Attorney General can maintain the action, and obtain an injunction in respect of the wrongful acts of the defendants."

Answering the question, the court proceeds:

"The difficulty in the present case is to ascertain whether the Attorney General can interfere in a case where the interests involved are those, not of the whole community, but of a limited portion of it, such as the inhabitants of a parish. * * * In my opinion it follows from these authorities that in the circumstances of this case the parish council might have maintained the action, and that if the parish council had been plaintiffs it would not have been necessary to join the Attorney General. As to that I have no doubt at all, but it does not decide the whole matter, for there remains the question whether the Attorney General may not be joined as a party to an action in a case in which it is not absolutely necessary that he should be joined. I find an almost complete absence of authority on that point, but, forming the best judgment that I can, it seems to me that the rights, which the Attorney General intervenes in order to protect, as representing the crown, in the capacity, as it is stated in some of the cases, of parens patriæ, must be rights of the community in general, and not rights of a limited portion of his majesty's subjects, especially when the limited portion in question, the inhabitants of a parish, have representatives who can bring the action."

Here, as in the English case, we have a body corporate, so constituted by statute, with power and authority to redress the wrong which it is alleged the particular community has suffered. There exists, therefore, in the present situation, no occasion for the Attorney General's interposition for the relief of the general public.

[3] Nor do we think this a matter between two sovereignties—that is, between the general government and the state of Washington, as is illustrated by the cases of Alabama v. Schmidt, 232 U. S. 168, 34 Sup. Ct. 301, 58 L. Ed. 555, Emigrant Co. v. County of Wright, 97 U. S. 339, 24 L. Ed. 912, and Emigrant Co. v. County of Adams, 100 U. S. 61, 25 L. Ed. 563. The funds have passed from the government, not only to the state, but into the hands of the county treasurers charged with the trust which Congress has impressed upon them. It is essentially a matter between the county and the school district, and presents the question whether the county commissioners may dispose of the funds in any other way than that in which Congress has directed that they shall be expended. The state has merely directed that the county commissioners shall expend the money in accordance with the terms of the grant or appropriation of the funds to the state.

[4] The case is clearly one for equitable jurisdiction, as it involves a trust and alleged maladministration of trust funds.

It is further presented that this court has no jurisdiction in the premises, as it is insisted that no federal question is involved. In this we are unable to concur. The very crux of the controversy depends upon a construction of the congressional grant or appropriation; that is, whether shall the funds be expended in equal shares for road and school purposes, or is it a matter discretionary with the state author-

ities? This undoubtedly presents a federal question. Such a question—

"is involved not merely when the construction of a federal statute incidentally arises, but when the case necessarily turns upon the construction of the federal laws, as when the plaintiff would be defeated by one construction, or successful by another." Hughes' Federal Procedure (2d Ed.) 235.

[5] The question which pertains to the proper construction of the grant remains. The funds are to be expended "for the benefit of the public schools and public roads." The use of the conjunctive would seem to indicate that at least not all of such funds should be expended for the one purpose or the other. But we concur with the court below that the language should receive a like construction to that which obtains with respect to wills, gifts, and deeds, where property is bestowed upon or passed to two or more persons, without defining the proportion in which they shall take; the presumption being that they shall take in equal proportions. See Lee v. Wysong, 128 Fed. 833, 63 C. C. A. 483; Markoe v. Wakeman, 107 Ill. 251, 261; Keuper v. Mette, 239 Ill. 586, 88 N. E. 218; Gerting v. Wells, 103 Md. 624, 64 Atl. 298, 433; Campau v. Campau, 44 Mich. 31, 5 N. W. 1062; Hill v. Reiner, 167 Mich. 400, 132 N. W. 1031; Bennett v. Quinlan, 47 Mont. 247, 131 Pac. 1067; Justice v. Stringer, 160 Ky. 354, 169 S. W. 836; In re Helling, 84 Misc. Rep. 684, 147 N. Y. Supp. 799; In re Conner's Will, 6 App. Div. 594, 39 N. Y. Supp. 900.

This results in affirmation of the decree appealed from, and such will be the order of the court.