[No. 7682.    Decided April 2, 1909.]

DAVID GROSS, *Respondent*, v. W. J. BENNINGTON,
*Appellant.*[1]

JUDGMENT—UPON ADMISSIONS—OPENING STATEMENT OF COUNSEL.
A judgment against the defendant upon the admissions of counsel
in his opening statement to the jury, with issues made by the
pleadings to be tried out, can only be sustained where the admissions
are deliberately made and distinct, and absolutely preclude a re-
covery.

BILLS AND NOTES—DEFENSES—FAILURE OF CONSIDERATION—BONA
FIDE HOLDERS—NOTICE TO INDORSEE. Where a bank, the indorsee of
a note, gave a recommendation to the agent of a railroad to use in
securing the note from the makers in consideration of proposed rail-
road construction, knowing that the railroad was bankrupt, the bank
acquires the note with notice of its infirmity by reason of failure
of the consideration for which the note was given.

BILLS AND NOTES—ASSIGNMENTS. One deraigning title to a note
by assignment from the indorsee, takes subject to any defense that
might be made against the indorsee.

BILLS AND NOTES—DEFENSES—FAILURE OF CONSIDERATION. A con-
tract to furnish transportation over a proposed railroad, and a note
given in consideration of the contract must be construed together,
and failure of the company to construct the road is a good defense to
an action on the note.

Appeal from a judgment of the superior court for Adams
county, Frater, J., entered January 24, 1908, in favor of the
plaintiff, upon the pleadings and defendant's opening state-
ment to the jury, after the close of plaintiff's case, in an
action upon a promissory note. Reversed.

*Henley & Kellam,* for appellant.

*Lovell & Davis,* for respondent.

DUNBAR, J.—This was an action by the plaintiff, as an
innocent holder of a promissory note payable to the order of
the Spokane-Columbia River Railroad & Navigation Com-
pany. The complaint alleges the execution of the note and

[1]Reported in 100 Pac. 846.

that the payee, the said railroad company, for a good and valuable consideration, duly indorsed and delivered the note to the German-American Bank, and that afterwards the note was duly assigned and delivered to M. B. Burkhart, who in turn assigned and delivered the same to the plaintiff.

The answer denied that the note was by the railroad company indorsed to the bank, and denied knowledge or information sufficient to form a belief that the note was assigned to Burkhart, or that it was by him assigned to the plaintiff. The answer then set up an affirmative defense to the effect, in short, that this note was given in consideration of the construction of a certain railroad and the promise to furnish the payor of the note with certain transportation; that the road was never built, and the transportation never furnished; that, at the time this note was placed in the hands of the bank, it had full knowledge that the railroad company would not carry out its contracts with the payor of the note, and that it did not intend to build, equip, and operate the road it had agreed, etc., but that the defendant was ignorant of this at the time he signed said note, and signed it upon the representations of the railroad company, and that if the notes were indorsed or assigned to Burkhart and by Burkhart to the plaintiff, the assignments and delivery in each instance were made with full notice and knowledge of all the facts set forth; that the bank held these notes as collateral security for a debt of the Spokane-Columbia River Railroad & Navigation Company, in the sum of $5,000, and no more, and without authority so to do, sold or pretended to sell all of said notes, of the face value of not less than $15,000, to the said Burkhart, who was then a trustee of the bank, who did not pay to exceed $2,500 for the same; that one Bennington and one Hunt, being financially able so to do, and being also signers of said notes, with the intention of protecting this defendant and all other signers of said notes, went to the bank and offered to take up and pay to said bank the amount of said $5,000 note and interest, and take

over from that bank said note and the notes hereinbefore re-
ferred to, claimed by said bank to be held as collateral to
said $5,000 indebtedness, for the purpose and with the un-
derstanding that the said Bennington and Hunt should *pro
rate* the amount so paid to the bank and collect from the
signer of each note his proper proportion of the same, and
upon such payment being made to cancel and deliver up
each note to the signer thereof, which offer the said bank
refused to accept, assigning as a reason therefor that the
said bank proposed itself to protect the signers of said notes
against the fraud of said railroad company. This is suffi-
cient of the answer, probably, to set forth.

No reply was made to the affirmative matters set up in the
answer. The plaintiff made his opening statement to the
jury, and proceeded to the trial of his cause. Upon the con-
clusion of plaintiff's case, the defendant made an opening
statement to the jury, and at the conclusion of said state-
ment, motion was made for judgment upon the statement and
upon the pleadings, which motion was granted.

An examination of the answer in this case certainly pre-
cludes the idea that judgment could have been granted on
the pleadings; for many of the essential matters stated in
the complaint are denied in the answer, to say nothing of the
affirmative matters set forth as a defense. Nor does the ap-
pellant in his brief insist that the motion should have been
granted upon the pleadings alone. It is, of course, well
established that a court cannot properly render judgment
until all the issues raised by the pleadings are determined.
The issues not having been determined by the answer, but
having been put squarely in issue, was there anything in the
statement made to the jury by counsel for the appellant that
would settle all the matters at issue under the pleadings? We
think not. It seems to us the court's ruling was a harsh one
under the circumstances. It is, no doubt, true that there are
instances where, by a statement made by counsel, his defense
may be entirely swept from under him. But these statements

must be deliberately made, and the admissions must be distinct, and such admissions as would absolutely preclude a recovery. But all the courts agree that the power of the court in this particular should be exercised with caution, and that counsel should have the benefit of the presumption that he did not intend to make a statement or admission that would be fatal to his case.

It is contended by the respondent that the appellant admitted that the note was transferred to the German-American State Bank; that the German-American State Bank gave for this note and several others the sum of $5,000, and that the $15,000 was placed to the credit of the railway company, the holder of this note. But even admitting this, it was denied that the notes were indorsed, and that was an issue in the case. It is true that respondent's witnesses testified that the notes had been indorsed, but that did not establish it beyond the reach of any testimony which the appellant might see fit to offer on the issue raised. He might have shown that the indorsement alleged to have been made by the railroad company was not its indorsement, that it was not genuine, and that the note was never indorsed or delivered to subsequent holders; and under the allegations of the answer it could have been shown that the assignment to Burkhart was fraudulent. It must be borne in mind that there was no reply to the affirmative allegations of this answer; nor was it demurred to, though that was the proper place in the proceedings to have raised the question that has been raised by the respondent here, so far as the pleadings are concerned. We are unable to find anything in the statement made by counsel for appellant that would militate against the right of the respondent to defend this action. He did not state that the makers of these notes had information in relation to the irresponsibility of this company, but that statement was made with reference to the bank.

"These matters," said the counsel, "were all brought to the attention of the bank. We will show you that the officers

of the bank know or should have known—an ordinary inquiry would have led them to know—that the railroad company was at that time bankrupt; were not able to meet any obligation; were at that time absolutely in debt beyond the value of their assets; that ordinary inquiry would have developed the fact to these men that it would have taken from $250,000 to $500,000 to have put the railroad company in a position where the Elden-Belt contract could have taken effect, if it would have taken effect under any circumstances."

Counsel places stress on the assertion that an ordinary inquiry would have led them to know; but an ordinary inquiry that might lead a bank, which was doing business with a large concern and looking after its financial interests with the care and caution with which such institutions are presumed to look after their interests, to determine certain facts, would not be held sufficient to place a farmer or persons engaged in business of that kind on their guard. But it is still further a matter of issue in this case that the bank gave the agent of the railroad company a recommendation with which he went to the farmers and used to obtain the signatures to these notes, knowing at the time this recommendation was given that the railroad company would not be able to carry out its contracts with the farmers. If this is true, then the bank had notice of the infirmity in the instrument which it purchased, and that such infirmity would constitute a defense in the hands of the payee. Burkhart and Gross, deraigning their title to the note, not by indorsement but by assignment, stand in the same position that the bank stood. Again, the contract to furnish transportation and the note contract must all be construed together, and construing them together, the failure of the one would be a defense to the other. We think, under the pleadings and all the facts stated, that the court erred in granting the motion for judgment. The judgment is therefore reversed.

RUDKIN, C. J., MOUNT, CROW, and FULLERTON, JJ., concur.

GOSE, CHADWICK, PARKER, and MORRIS, JJ., took no part.