IN RE GALLATIN IRRIGATION DISTRICT.

(No. 3,355.)

(Submitted February 9, 1914. Decided March 9, 1914.)

[140 Pac. 92.]

*Irrigation    District—Creation—Jurisdiction—Petition—Insufficiency—Construction of Act—Discretion—Witnesses—Mileage and Per Diem—Public Lands—Settlers—Taxation.*

Irrigation Districts—Liberal Construction of Act, When.
    1.    After the district court has acquired jurisdiction of the subject matter and the parties to a proceeding instituted under Chapter 146, Laws of 1909, relative to the creation of irrigation districts, by a proper petition filed with the clerk of the court, the provisions of the Act and the rules of procedure must be given the most liberal construction, to the end that the purpose of the statute may be carried into effect.

Same—Petition—Insufficiency—Dismissal.
    2.    The petition necessary to confer jurisdiction upon the district court to create an irrigation district under Chapter 146, Laws of 1909, must be signed by a majority in number of the land owners in the district who also own more than one-half of the acreage therein; hence where such a petition disclosed on its face that it was not signed by a majority of the land owners in the proposed district, an order dismissing it was proper.

Same—Public Lands—Settlers—Taxation.
    3.    A settler upon government land has not any taxable interest in it prior to making final proof; therefore, since all land comprised in an

irrigation district created under Chapter 146, Laws of 1909, is subject to an annual levy of taxes for the running expenses of the district, neither homestead nor desert entries may be taken into consideration in passing upon the sufficiency of a petition for the creation of such a district.

[As to exemption from taxation of land owned by governmental bodies or in which they have an interest, see note in 132 Am. St. Rep. 291.]

Same—Petition—Amendment—Discretion.

4. In the exercise of the powers conferred upon the district court in the creation of irrigation districts (Laws 1909, Chapter 146), it may exercise a wide discretion, an abuse of which, in refusing to permit a petition to be amended by the exclusion of lands and the addition of others, must be shown to put the court in error in dismissing the petition on the ground of insufficiency.

Same—Witnesses—Mileage and *Per Diem.*

5. The allowance of mileage and *per diem* to witnesses who were present and ready to testify for the objectors to the creation of an irrigation district and whose testimony would have been relevant, competent and material, was proper, though they were not subpoenaed, sworn or examined because of the dismissal of the petition for insufficiency.

Same.

6. Where a person was not called or examined as a witness, he was not entitled to fees, in the absence of a showing that his testimony could reasonably be offered as relevant, competent or material to the issues raised for trial.

*Appeal from District Court, Gallatin County; Albert P. Stark, Judge of the Sixth Judicial District, presiding.*

PETITION for the creation of an irrigation district. From an order dismissing the petition for insufficiency, petitioners appeal. Modified and affirmed.

*Messrs. Hartman & Hartman* and *Mr. H. D. Kremer,* for Appellants, submitted a brief; *Mr. Walter Hartman* argued the cause orally.

We are aware that it is settled in this state that the fees of a witness attending at the request of the party and testifying, together with his mileage, may be taxed by the party calling him against the unsuccessful party. (*McGlauflin* v. *Wormser,* 28 Mont. 177, 72 Pac. 428; *Great Falls Meat Co.* v. *Jenkins,* 33 Mont. 417, 84 Pac. 74; *Neary* v. *Northern Pacific Ry. Co.,* 41 Mont. 480, 110 Pac. 226.) The question as to whether the fees of witnesses who have neither been subpoenaed nor examined can be taxed has not been determined in this state, but it would seem that the party claiming to tax such fees ought at least to have

the burden of proof showing that the witnesses were material; that they attended in good faith upon his request made in good faith and that the taxation of the costs is not merely attempted to unjustly annoy his adversary. Some of the courts have held that fees of witnesses attending but not subpoenaed or sworn or examined cannot be taxed as costs against the losing party, and particularly where the circumstances will not show the utmost good faith upon the parties seeking to recover their costs. (*Fisher* v. *Burlington etc. Ry. Co.,* 104 Iowa, 588, 73 N. W. 1070; *Mylius* v. *St. Louis etc. Ry. Co.,* 31 Kan. 232, 1 Pac. 619; *Sapp* v. *King,* 66 Tex. 570, 1 S. W. 466.) And it has been held where a large number of witnesses have been summoned and not examined the presumption arises that they are unnecessary and their costs should not be allowed unless that presumption is overthrown. (*Dean* v. *Williams,* 6 Hill (N. Y.), 376; *Haynes* v. *Mosher,* 15 How. Pr. (N. Y.) 216.) And it is again held that under such circumstances, the taxation of the costs of such witnesses as are objected to demands a showing by the party summoning them that the witnesses were or might have been material, or affidavits stating facts showing the necessity of having them in attendance. (*Osborne* v. *Gray,* 32 Minn. 53, 19 N. W. 81; *Meagher* v. *Van Zandt,* 18 Nev. 230, 2 Pac. 57; *Lillienthal* v. *Southern California R. Co.,* 61 Fed. 622; *Haines* v. *McLaughlin,* 29 Fed. 70.)

*Mr. John T. Smith & Son* and *Mr. Ike E. O. Pace,* for Respondents, submitted a brief; *Mr. John T. Smith* and *Mr. Pace* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On January 27, 1913, there was filed with the clerk of the district court of Gallatin county a petition for the creation of an irrigation district under the provisions of Chapter 146, Laws of 1909.

The petition suggests a name for the proposed district; describes by government subdivisions all lands sought to be in-

cluded; gives the names of all holders of title or evidence of title and the postoffice addresses of all who are nonresidents; describes the source of intended water supply and the means of irrigation, and concludes with a prayer for appropriate relief. A map showing the proposed district and irrigation system accompanied the petition and a sufficient bond, duly approved, was furnished. An order was made fixing a time and place for hearing; the statutory notice was given and proof of service made. Before the hearing a protest in writing on behalf of twenty-seven of the owners named in the petition, and eight others was filed, objecting to the petition and to the organization of the district upon some twelve grounds, among which are: That certain petitioners are not the owners or holders of title or evidence of title to any lands in the proposed district; and that "a majority in number of the holders of title or evidence of title to lands susceptible of irrigation from the same alleged general source and by the same general system of works, have not signed the petition herein, nor proposed the establishment and organization of said system."

At the hearing counsel for the petitioners moved to amend by adding to the petition the names of three other qualified petitioners and the description of certain land. The motion was denied *pro forma* with leave to renew it, but counsel did not avail themselves of the privilege extended. The petitioners also moved to further amend by striking from the petition the names of Nancy L. Woodward, executrix, and "Garnett Bros.," and the descriptions of all lands accredited to these parties in the petition. This motion was denied—the court assigning as its reason that "it appears upon the face of the petition that these persons are the owners of lands susceptible of irrigation from the same general source, and included within the boundaries of the proposed district." The court then proceeded to ascertain whether the petition was in fact signed by a majority of the holders of title or evidence of title to the lands described therein, and upon such hearing it was made to appear that two of the signers are homestead entrymen, and a third is a desert entry-

man, no one of whom has made final proof; that "Garnett Bros." consists of J. E. (or Edwin) Garnett, Frank Garnett and Addie Garnett, and that Nancy L. Woodward is the executrix of the last will of A. J. Woodward, deceased; that the estate is in process of administration in the district court of Gallatin county; that the heirs at law of A. J. Woodward are Nancy L., the surviving widow, and seven children; that certain lands are entered upon the assessment-roll to "Garnett Bros.," but the records indicate that the ownership is in the three Garnetts named; that portions of the Woodward lands are assessed to "A. J. Woodward," and the records of the state land office disclose that they were purchased from the state by "Nancy L. Woodward, Admr." Upon this showing the district court entered an order dismissing the petition at the cost of the petitioners. The appeal is from that order.

The avowed purpose of Chapter 146 above is to provide for the creation, organization and management of irrigation districts. When one of these districts is created it becomes a public corporation with certain enumerated powers, among which are to procure an irrigation system by purchase or construction, and to pay for the same and for the upkeep or running expenses. The management is vested in a board of three commissioners appointed for their initial term by the court, and elected thereafter annually by the land owners of the district who are qualified electors under the Act. Upon this board are conferred very extensive powers. The members are allowed compensation for their services, are permitted to employ clerical help, engineers, common laborers and others, at the expense of the district; to incur indebtedness, to purchase property, *etc.* The apparent theory of the statute is the naked right of the majority to rule. It requires a majority of the land owners (using the terms "land owners" herein to indicate the holders of title or evidence of title) who also own a majority of the acreage, to initiate the movement for the creation of one of these districts, but a bare majority may succeed in having a district created over the protest and objection of the minority. While there is an initial

48 Mont.—39

limit of $10,000 placed upon the power of the board to incur indebtedness for a water system and to charge the district therefor, the written consent of a bare majority of the land owners who own a majority of the acres in the district removes that limitation. Under the Act as it stood at the time this proceeding was instituted, the board could incur an indebtedness against the district to the extent of $5,000 in any one year. Under the amendment made to section 38 by the legislature in 1913, a much wider latitude is allowed. Section 19 prescribes the qualifications of district voters. Neither the nonresident land owner nor the resident land owner who does not possess the qualifications of an elector at our general state or school elections has any voice whatever in the management or control of a district after it is organized.

These observations upon the general character of the legislation are made to indicate the extent to which all the proceedings as against a minority land owner are *in invitum,* and the extent to which the minority member is at the mercy of the majority. His property may be encumbered against his will and he may be compelled to respond for debts which he never contracted or authorized.

The proceeding is somewhat analogous to that invoked in creating special improvement districts in cities and towns. The power to create one of these districts and certain supervisory control over its affairs after it is created are lodged with the district [1] court. But the court must acquire jurisdiction of the subject matter and of the parties before it can order a district created and the Act provides just how such jurisdiction shall be obtained. When once the subject matter and the parties are before the court, then the provisions of the Act and the rules of procedure are to be given most liberal construction, to the end that the purpose of the Act may be carried into effect. Jurisdiction over the subject matter is acquired when a proper petition is filed with the clerk of the district court. In order to be of any avail—in order to set the machinery of the law in motion, [2] such petition must be signed by a majority in number of

the land owners who also own more than half of the acreage in the proposed district. For the purpose of determining whether a petition meets these requirements, the court is authorized by section 4 to take testimony if necessary. A domestic corporation is treated as an individual, and a guardian, executor, administrator or trustee residing in this state is authorized to act for his ward, estate or beneficiary, as the case may be, so far as exercising the voting power is concerned. (Section 19.) In the instant case the petition names sixty-one individual or corporate owners, and in addition thereto names Nancy L. Woodward, executrix of the last will of A. J. Woodward, deceased, and "Garnett Bros." as owners. The petition is signed by thirty-two, not including either Mrs. Woodward or Garnett Brothers.

The fact that Nancy L. Woodward is executrix of the last will of A. J. Woodward, deceased, of itself means nothing. We are not advised as to the provisions of the will or whether Mrs. Wood- · ward is sole devisee of this particular land, but it is unnecessary to determine whether "Nancy L. Woodward, Executrix," should be counted as one land owner, for the result would not be affected. While an individual might conduct his business under the name "Garnett Brothers," we think those terms imply, *prima facie,* more than one person. This must be so if any attention whatever is paid to the ordinary usage of common English words. The word "brothers" is the plural of "brother" and means more than one. Counting Garnett Brothers as two persons, at least, and the petition on its face discloses that it fails to meet the requirements of sections 1 and 2 of the Act. There are at least sixty-four land owners in this district and the petition was signed by only thirty-two, which is not a majority. When the court heard evidence, the deficiencies of the petition were made all the more apparent. Garnett Brothers are three persons, while of the thirty-two who signed, three are clearly not qualified [3] signers under the Act. Neither a homestead nor desert entryman has any title or evidence of title to the land held by him, prior to the time he makes final proof. It is not even necessary to consider the effect of the lien of a bond issue upon the lands

held by these three. to determine that the Act never contemplated that government lands are to be included in one of these districts. The ordinary overhead or running expenses of a district are to be met by an annual levy of taxes (section 49) imposed upon all lands therein, ''except such lands as have been included within such district on account of the exchange or substitution of water.'' (Section 48.) That a settler upon government lands does not have a taxable interest in the land prior to making final proof has been the universal holding, or practically so, of all the authorities. If we deduct the names of the homestead and desert entrymen, the petition has but twenty-nine qualified signers as against a total of sixty-five at least.

Doubtless, if the trial court had felt certain that the petition was *prima facie* sufficient, it would have permitted it to be amended by the addition of the names of the three other qualified petitioners; but when it appeared that three of the original petitioners were not qualified to sign, the addition of three other names would not have rendered the petition sufficient. As we said above, after it is shown that the court has jurisdiction, the most liberal rules of procedure should be applied; but in the face of a showing that jurisdiction had not been acquired in the first instance, the court cannot be put in error for failing to do what it had no power to do, or what would have been useless.

Section 4 contemplates that the court may exclude lands from [4] the proposed district, but certainly the most that can be said of the action of the court, upon petitioners' request to exclude the Woodward and Garnett lands is, that it exercised its discretion against permitting the amendment and in the absence of any showing of abuse of such discretion, and in the presence of petitioners' own showing that those lands lie within the proposed district and are susceptible of irrigation from the same general source and by the same general system as the other lands mentioned, the order cannot be disturbed. A very wide discretion appears to be lodged in the district court and rightfully so, if the Act is to be made workable. This procedure is purely statutory. The Act prescribes in detail the steps necessary to be

taken to clothe the district court with authority to act, and these statutory requirements must be fully met before the court can proceed. When it thus appeared that the petition was not sufficient to give the court jurisdiction, the order of dismissal was the only one which the court could make.

Upon the entry of the order, the objectors filed a memorandum [5] of costs, including therein mileage and *per diem* for fourteen witnesses and *per diem* for two others, amounting in all to $284. A motion to tax and to strike out every one of these items was made and overruled, and error is assigned. Appellants object to the allowance of any fees to these witnesses because they were not subpoenaed, sworn or examined. An affidavit by counsel for the objectors was filed, setting forth generally that the witnesses were present to testify (1) that the petitioner's plan for irrigating the lands in the proposed district is impractical; (2) that there is not sufficient surplus or flood water at the intended source of supply to fill the proposed reservoir or to irrigate the lands in the proposed district; and (3) that all of the lands in the district produce crops without artificial irrigation, and the increased yield would not compensate for the added expense. Section 3 of the Act provides for notice of a hearing upon the petition for the creation of a district, and section 4 declares: "Upon such hearing all persons interested whose lands or rights may be damaged or benefited by the organization of the district or the irrigation works or improvements therein or to be acquired or constructed as hereinafter set forth, may appear and contest the *necessity or utility* of the proposed district, or any part thereof, and the contestants and petitioners may offer any competent evidence in regard thereto." If, then, the questions of the necessity and utility of the proposed district were properly before the court for determination, it seems clear that the evidence which these witnesses were called to give was relevant, competent and material. Appellants cannot complain that they were not subjected to additional expense for the service of subpoenas upon these witnesses; and neither are they in a position to urge that the witnesses were unnecessary because the petition

was insufficient. The objectors were required to be prepared to contest the petition upon its merits if the trial court ruled against them upon the preliminary objections to its sufficiency.

No explanation is offered for the presence of the witness Thomas Copenholm. One party to the controversy cannot mulct [6] his adversary for the expense of a witness who was not called or examined, in the absence of some showing that the testimony which he was expected to give could reasonably be offered as relevant, competent or material to the issues raised for trial. The item of $12 charged for that witness should have been eliminated.

The cause is remanded to the district court with direction to strike from the cost bill the item of $12 charged for the witness Thomas Copenholm, and with this modification the order of the district court will stand affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

Rehearing denied April 21, 1914.