BLASER, Appellant, *v.* CLINTON IRRIGATION DISTRICT
ET AL., RESPONDENTS.

(No. 7,341.)

(Submitted September 19, 1935. Decided October 9, 1935.)

[53 Pac. (2d) 1141.]

460

*Mr. John E. Patterson* and *Mr. C. E. Comer,* for Appellant, submitted an original and a reply brief; *Mr. Patterson* argued the cause orally.

*Mr. Edward C. Mulroney,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Albert F. Blaser, brought action against the Clinton Irrigation District, established in 1919, to compel the extension of its canal from a point near Smith Creek to Dirty Ike Creek, a distance of approximately two miles, and by a second cause of action alleged, sought to recover damages for loss of crops throughout the years from 1919 to 1932. Issue was joined by answer and reply, and a trial was had before the court sitting without a jury, a jury trial having been expressly waived by the parties. At the close of the trial the court made findings in favor of the defendants, and entered judgment dismissing the action as to each of the causes alleged.

The plaintiff has appealed from the judgment; he makes forty-five specifications of error. The controlling questions raised are as to whether or not the order of the district court establishing the district fixed the western terminus of the canal at Dirty Ike Creek, and, if so, whether oral testimony was admissible to vary the terms of that order, and, if the terminus was not so fixed, whether or not the evidence adduced is sufficient to prove, in conformity with the court's findings, that, before the hearing in the district court, the organizers changed their original plans and determined to extend the canal only to Smith Creek, with the further agreement that each user should construct his laterals at his own expense.

The undisputed facts are substantially as follows: In the spring of 1919 the ranchers in the Clinton district, in Missoula county, determined to organize an irrigation district; they held preliminary meetings at which they employed an attorney to draft a petition, and a civil engineer to make a preliminary survey and prepare a map of the proposed district. The petition, prepared and circulated, complies with the requirements of sections 7166 to 7173, Revised Codes of 1921; it describes the intake proposed at the source of supply—Hellgate River—from which it is proposed to divert 3,000 inches of water through a canal extending ''generally in a westward direction'' and con-

ducted "by means of ditches, canals and flumes and culverts onto and over the lands of the proposed district." The petition describes the lands of the nineteen proposing members of the district, totaling 1,512 acres, of which 675 acres lie west of Smith Creek.

All of the proposing nineteen land owners signed the petition, with the exception of Dr. G. F. Turman, who was out of the state at the time the petition was circulated, and H. P. Greenough. The plaintiff, Blaser, signed the petition in which his land is described as "all of the Northeast Quarter of Section 18, Township 12, North, Range 17 West, north and east of the Hellgate river, and south of the Northern Pacific Railroad." This land is the extreme western portion of the proposed district, and is on Dirty Ike Creek. The Greenough land described in the petition—160 acres—lies just east of the Blaser land and some distance west of Smith Creek.

The map, made pursuant to the preliminary survey, shows the lands described in the petition, with a section of the Hellgate River and sections of the Northern Pacific and Milwaukee railroads, and shows portions of the feasible route for the canal. It does not show the proposed intake, which is some distance east of where the map begins, but thereon the canal is extended to Dirty Ike Creek, on plaintiff's land, and there appears the word "Terminus."

The petition, with the map attached, was filed in the district court on August 2, 1919. Thereafter the Greenough interests refused to come into the district, and all lands lying north of the Northern Pacific Railroad—most of them being west of Smith Creek—were withdrawn, and the plaintiff and others owning land south of that railroad and west of Smith Creek were permitted substantially to reduce the amount of their land to be included within the district. By this method of withdrawal the plaintiff's land within the district was reduced to 43 acres, and the acreage of the district was reduced by 517.5 acres, 425.5 acres of which lie west of Smith Creek. Thus the organizers were left with but 995.14 acres to stand the cost of construction, instead of 1,512 acres, as originally contemplated.

The petition was set for hearing as of September 10, 1919. On September 8 the petitioners, including this plaintiff, met for the purpose of determining what should be done in view of the shrinkage of the proposed district. The minutes of the meeting were kept by an aged farmer as secretary and are not clear as to the action taken. On this question there is some conflict in the evidence. However, in conformity with the positive testimony of half a dozen of those present, the court made its finding that, "owing to the fact that approximately 425½ acres of said land first proposed to be included in said district lying west of Smith Creek, * * * and about 92 acres east of Smith Creek, were eliminated, * * * it was definitely decided, determined and agreed by such owners * * * , including the plaintiff herein, that said main ditch or canal would run * * * to a point where said * * * canal would intersect Smith Creek; * * * that such point on Smith Creek would be the termination and westerly end. That said district was to construct and maintain said main ditch or canal only, * * * and that each land owner would * * * tap said main * * * canal and, at his own expense, construct and maintain a lateral ditch, * * * from that point to and upon his land for the purpose of conveying * * * water * * * to his land."

In addition to the positive testimony as to the conclusion reached without objection by the plaintiff, Dr. Turman testified that, after he was chosen for recommendation to be one of the commissioners of the district when created and before the meeting of September 8, Blaser told him of the proposed change in termination of the canal and that the change would be satisfactory, provided he, Blaser, was permitted to reduce his acreage; that he then told Blaser to have the land he intended to leave in the district surveyed and the remainder could be withdrawn, and they would have a definite understanding that the canal should stop at Smith Creek instead of Dirty Ike Creek. Blaser merely testified that he did not "recall" the conversation. Such a statement does not contradict the positive

testimony of a witness. (*Lasby* v. *Burgess,* 88 Mont. 49, 289 Pac. 1028.) Plaintiff's land was reduced in accordance with his request.

The plaintiff, however, contends that all of this evidence was inadmissible as constituting a collateral attack upon the decree creating the district, which, it is insisted, adjudicated the terminus of the canal to be at Dirty Ike Creek. If the final premise is based on fact, the plaintiff's position is sound and the trial court committed error in admitting testimony to vary the decretal portion of the order establishing the district. Such an order is in the nature of a judgment or decree and cannot be attacked collaterally, unless the judgment-roll in the cause shows it to be void. (*In re Fort Shaw Irr. Dist.,* 81 Mont. 170, 261 Pac. 962; *Walden* v. *Bitter Root Irr. Dist.,* 68 Mont. 281, 217 Pac. 646; *O'Neill* v. *Yellowstone Irr. Dist.,* 44 Mont. 492, 121 Pac. 283.) The decree stands as an absolute finality as to everything directly or impliedly determined. (*Lokowich* v. *City of Helena,* 46 Mont. 575, 129 Pac. 1063.)

However, turning to the order establishing the district, we find no declaration therein that the canal shall be constructed over any given course or have its terminus at a designated point; but their inclusion in the decree, plaintiff contends, must be assumed from the fact that the decree rests upon the findings of the court, among which is the declaration that the petition and map were duly filed. These facts appear, not in the decretal portion of the order, but in the recitals included to demonstrate that all jurisdictional steps were taken and that the court was, therefore, authorized to make the order. Error with respect to such recitals will not vitiate a judgment. (*In re Dingman,* 110 Wash. 513, 188 Pac. 755.) Findings of fact are not the judgment but merely the foundation for the judgment (*State ex rel. Reser* v. *District Court,* 53 Mont. 235, 163 Pac. 1149), and therefore, in order to determine what has been adjudicated, we must look to the mandatory portion of a judgment or decree and not to the recitals. (*Galiger* v. *McNulty,* 80 Mont. 339, 260 Pac. 401; *Bennett* v. *Quinlan,* 47 Mont. 247, 131 Pac.

1067.) However, a valid decree must rest upon findings, express or implied, on all material issues (*Penninger Lateral Co.* v. *Clark*, 22 Idaho, 397, 126 Pac. 524; *Dillon Imp. Co.* v. *Cleaveland*, 32 Utah, 1, 88 Pac. 670; *Gross* v. *Bennington*, 52 Wash. 417, 100 Pac. 846); but where the court fails to make formal findings, every finding necessary to support the decree will be implied (*Croft* v. *Bain*, 49 Mont. 484, 143 Pac. 960; *Steiner* v. *McMillan*, 59 Mont. 30, 195 Pac. 836), provided, of course, the evidence will support such findings, or where the evidence is not before this court. (*Boe* v. *Hawes*, 28 Mont. 201, 72 Pac. 509.)

It therefore becomes necessary to determine whether the location of the western terminus of the canal was a "material issue" before the court. Turning to the requirement of the statute with respect to the contents of a petition for the creation of such a district as here involved, we find that the petitioners must state "generally the source from which the land in the proposed district is to be irrigated, the character of the works, water rights, canals and other property proposed to be acquired or constructed * * * ." (Sec. 3956, Rev. Codes 1921, in effect since 1909, Chap. 146, sec. 1, Laws of 1909.) We find herein no requirement that the course of the proposed canal and its termini shall be definitely stated in the petition, and the petition before us makes no reference to such data.

"The petition shall be accompanied with (1) a map or plat of the proposed district, and (2) a good and sufficient bond." (Sec. 3956, above.) Nothing is said with respect to the canal, with its termini, appearing on the map or plat; this requirement being manifestly for the purpose of enabling the court accurately to describe the *district*, not the "works," "canals" or "other property to be acquired or constructed." The statute requires only a "map of the proposed district," and does not mention the irrigation system for the district which may lie, in part, without the district. An accurate description of the "district" must be included in the order of creation, and if the boundaries of the district are erroneously described, the order is void notwithstanding the fact that they are properly described

on the map (*Yoder* v. *Board of Supervisors*, 208 Cal. 368, 281 Pac. 393), for this has to do with a "material issue," the decision as to which must be found in the mandatory portion of the judgment, not in its recitals. (33 C. J. 1194.) The material issues on the hearing are, therefore, determined by the declaration of the statute as to what must be declared in the order, i. e.: "If it be found that the petition substantially complies" with the requirements, "and that the facts therein stated are sustained by the evidence, then the court shall make and enter an order (1) setting forth said findings and allowing said petition; (2) establishing said districts; (3) giving description of the lands * * * ; (4) dividing the district into divisions * * *; (5) appointing * * * directors." (Sec. 3958, Rev. Codes 1921.) Herein is no requirement as to a description of the canal or the termini thereof.

There must, of course, be evidence of a reasonably definite plan of the irrigation system, in order that the court can determine what lands are susceptible of irrigation and whether the district is feasible and practicable from an engineering standpoint (*In re Harper Irr. Dist.*, 108 Ore. 598, 216 Pac. 1021), but such evidence need not include the fixing of a definite and final terminus, and the court's findings on this question need go no further than to determine what lands are susceptible to irrigation from the proposed system and will be benefited thereby, and as to the feasibility of the district. (*In re Gallatin Irr. Dist.*, 48 Mont. 605, 140 Pac. 92; *Drake* v. *Schoregge*, 85 Mont. 94, 277 Pac. 627; *Scilley* v. *Red Lodge-Rosebud Irr. Dist.*, 83 Mont. 282, 272 Pac. 543.)

It would seem clear from the statutes and the authorities above, that the court's order should be clear as to the matters required to be included therein, especially as to the boundaries of the district and the lands included, the practicability of the district and the benefit or damage which will accrue to the lands included in the district (sec. 3958, above), but should leave the details respecting the works to be constructed to the discretion of the district.

The above evidence was admissible to dispel obscurity or ambiguity as to the question raised. (22 C. J., p. 1279, sec. 1707.) That the court on making its order understood that the western terminus was to be at Smith Creek would seem to be clear.

Dr. Turman's consent to have his land included within the district contains the proviso that his consent is given with the understanding that the "irrigation district" (canal) "is to be constructed from the point of diversion through and under the Northern Pacific track opposite the John Caplis place and no further." The Caplis place is on Smith Creek. Dr. Turman appeared before the court on the hearing and explained the preliminary agreement which formed the basis of the petition, and stated that the manner of conducting the water "on and over the lands" was "an engineering detail that had not been worked out at that time, where the ditch would end," and explained that the acreage had been materially reduced with a corresponding rise in, cost to the acre. The court then asked him if he desired to be included in the district, to which the witness replied, "Yes, with that proviso, that is if it includes just the main canal, * * * not an attempt to deliver it to each person's land," with the exception of assisting certain land owners south of the track to build a siphon under the track.

No objection was raised to the inclusion of the Turman land on the conditions he imposed, and if the court, on making the order, had any idea of fixing the western terminus of the canal, it must have been that such terminus was to be at Smith Creek. The judge who made the order establishing the district, presided at the trial of this action and rendered the decree from which this appeal is taken.

Other questions raised concern the rights of the plaintiff who has paid his assessments over a period of years and has, admittedly, not received water from the canal. By the payments made plaintiff has acquired his proportionate interest in the irrigating system and his rights became fixed—an interest in realty. (*Graham* v. *Great Falls Water Co.*, 30 Mont. 393,

76 Pac. 808.) It is the duty of the district to protect his rights, but that duty extends to "all who are entitled to a distributive share in the waters of the system." (*Maclay* v. *Missoula Irr. Dist.*, 90 Mont. 344, 3 Pac. (2d) 286.) If, during the period mentioned the plaintiff has suffered damage by reason of lack of water, the proximate cause of the damage is his failure to construct a lateral from the canal for the reception of his water, and not the failure of the district to perform any duty owing to him.

Finding no reversible error in the record, the judgment must be, and is, affirmed.

Associate Justices Stewart, Anderson and Morris concur.

Mr. Chief Justice Sands, absent on account of illness, takes no part in the foregoing decision.

Rehearing denied November 12, 1935.