[Civil No. 1835. Filed March 24, 1922.]

[205 Pac. 806.]

In the Matter of the Bonds of Drainage District No. 4 in and for the County of Maricopa, State of Arizona. W. S. STEVENS and E. C. STEVENS, Copartners Doing Business Under the Firm Name. and Style of STEVENS COTTON COMPANY, and ETHEL R. STEVENS, Wife of W. S. STEVENS, and NELL STEVENS, Wife of E. C. STEVENS, Appellants, v. A. F. LAFFERTY, CARL N. TOWNER and J. G. SCHWEIKART, as Members of and Constituting the Board of Directors of Drainage District No. 4 in and for the County of Maricopa, State of Arizona, Appellees.

1. DRAINAGE DISTRICTS—PROCEEDING IN RELATION TO ESTABLISHMENT OF DRAINAGE DISTRICT, STATUTORY AND RIGHT OF REVIEW LIMITED TO MANNER PRESCRIBED.—Under chapter 5, title 55, Civil Code of 1913, entitled Drainage Districts, the board of supervisors has jurisdiction to pass upon the question as to whether or not the lands of property owners whose lands are included in the proposed drainage district would be benefited thereby, and its determination of the same is final, unless within ten days after the entry of same upon its minutes an appeal is taken therefrom to the superior court, this proceeding being a purely statutory one and the right to review the determination of the board of supervisors being limited to the manner or mode set out in the statutes.

2. DRAINAGE DISTRICTS—BONDS—PROCEEDINGS TO DETERMINE VALIDITY
OF SAME.—Under paragraphs 5484 to 5488, inclusive, Revised
Statutes of Arizona of 1913, relating to drainage districts, it is
made the duty of the board of directors of the drainage district
within thirty days after the issue of any bonds to bring action to
confirm the validity of the bonds and if no such proceeding is
instituted by the board of directors, any district assessment payer
may within ninety days bring an action in the superior court
to determine the validity of any such bonds, it being further
provided that "at the hearing of such proceedings, the court
shall hear and determine the sufficiency of all proceedings." *Held,*
that the meaning to be attached to such confirmatory proceedings
is that the court should review the regularity, legality and cor-
rectness of what was done before the board of supervisors, or if an
appeal was taken, what was done before the court, including the reg-
ularity of the proceedings in voting and issuing bonds, and the court
might review all orders, rulings and determinations of every kind, the
evidence of which had been preserved before the board of supervisors
or in the trial on appeal, but that the court would not try the issues
involved *de novo* and that the question of benefits to lands in-
cluded in the drainage district could not be litigated in the pro-
ceeding to contest the validity of the bonds, the dissatisfied land
owner being relegated to making objections before the board of
supervisors, upon hearing of petitions to organize the district
or to an appeal therefrom to the superior court as provided by
statute.

APPEAL from a judgment of the Superior Court
of the County of Maricopa.  R. C. Stanford, Judge.
Judgment affirmed.

### ON REHEARING.

For former opinion see 193 Pac. 833, *supra,* page 31.

Messrs. Armstrong, Lewis & Kramer and Mr. J.
Early Craig, for Appellants.

Messrs. Kibbey, Bennett, Gust & Smith, for Ap-
pellees.

ROSS, C. J.—The opinion of the court, which is
brought into review upon this rehearing, is found
*supra,* page 31, 193 Pac. 833.  Upon a consideration
of the motion for rehearing the court, being in doubt

as to the correctness of its decision, requested counsel for appellants and appellees to ''present additional argument and authorities upon the right of appellants to show in a proceeding for confirmation of bonds that their lands would receive no benefit from the organization of the drainage district, they and their predecessors in interest not having appeared before the board of supervisors upon the hearing for the organization of the district, and not having objected to the inclusion of their lands within the district.'' In our opinion we took the position that the appellants did have the right in the confirmation proceeding to introduce evidence showing that their lands were not benefited or could not be benefited by the drainage scheme proposed, and that the trial court erred in refusing to permit evidence of that kind. We have now before us the briefs requested. We have also been aided by oral argument of counsel, and after thoughtful investigation, and reflection, are convinced that the views expressed in our former opinion on the point were unsound.

The first four paragraphs of chapter 5, title 55, Civil Code of 1913, entitled ''Drainage Districts,'' provide for the organization of such districts. Paragraph 5427 authorizes five or more holders of title or evidences of title to propose the organization of a drainage district. Paragraph 5428 provides that the proposition shall be by a petition to the board of supervisors of the county, signed by the required number of holders of title or evidence of title, which said petition shall be published at least two weeks before presentation in some newspaper published in the county wherein the petition is presented, together with a notice stating the date of the meeting of the board, at which the petition will be presented. Paragraph 5429 imposes a duty upon the board to hear the petition and on final hearing the board may make

changes in the proposed boundaries if deemed advisable, and shall define and establish such boundaries. The board is forbidden to exclude from the proposed district any territory which is susceptible of drainage by the same system of works applicable to other lands in the proposed district; nor shall any lands which will not in the judgment of said board be benefited by drainage by means of said system of work be included within such proposed district. It is made the duty of the board of supervisors to hear all competent and relevant evidence and testimony offered in support of the proposition to organize or in opposition thereto, the determination to be entered upon its minutes. Paragraph 5430 gives an interested party of record the right of appeal to the superior court, which shall be taken within ten days, after the entry of such order upon the minutes of the board of supervisors, the trial in the superior court to be *de novo* and the judgment one affirming, modifying or reversing the order appealed from. If the judgment should modify or reverse the order of the board of supervisors it is made the duty of the court to direct the board of supervisors what order the board should enter, and the board, at its first meeting, shall cause to be entered in its minutes the order as directed by the superior court.

The subsequent paragraphs 5431 down to 5483 provide for an election by the land holders to determine if the drainage district shall be organized, to elect directors thereof, for contests of election, for the duties of the board of directors and meetings and powers thereof, and generally for the transaction of the internal affairs of the drainage district, and among other things the voting for and issuing of the district's bonds.

Paragraphs 5484 to 5488, inclusive, provide for a judicial confirmation of the validity of bonds issued

by the district. By paragraph 5484 it is made the duty of the board of directors of the drainage district, within thirty days after the issue of any bonds, to bring the action for that purpose, and if no such proceeding is instituted by the board of directors, under paragraph 5485, any district assessment payer may, within ninety days after the issue of the bonds, bring an action in the superior court "to determine the validity of any such bonds." Paragraph 5486 provides: "At the hearing of such proceedings the court shall hear and determine the sufficiency of all proceedings." By paragraph 5488 it is provided that the court hearing the contest, "in inquiring into the regularity, legality or correctness of such proceedings, must disregard any error, irregularity or omission which does not affect the substantial rights of the parties to such action or proceeding." The general law of pleading and practice when not inconsistent is made applicable to the action or proceeding to determine the validity of bonds.

The appellants did not avail themselves of the right of appeal to the superior court from the decision of the board of supervisors organizing Drainage District No. 4. That they might have done so and had their rights passed upon by the board, tried *de novo,* is certain. The court would have had the power to inquire as to whether the appellants' lands would be benefited by the drainage proposed or not, and could have heard any competent evidence offered upon that issue by the appellants. In other words, every land owner in the proposed district, if he so chose, could have had a retrial of the questions heard by the board of supervisors, in the superior court, and secured therefrom a judgment as to whether his lands were benefited and should be included within the drainage district or not.

This, of course, is a statutory proceeding, and the right to have the determination of the board of supervisors reviewed is limited to the particular mode or manner set out in the statute. In other words, since the statute provides for the appeal, the party aggrieved must seek to have his grievance corrected by appeal, such remedy appearing to be adequate. The order of the board defining and establishing the boundaries of the drainage district is not vulnerable to attack in a collateral proceeding. The statute made it the duty of the board of supervisors to determine whether the proposed lands would "be benefited by drainage by means of said system of works," and while the board may have made a mistake in including appellants' lands in the drainage district, the law gave the board jurisdiction to pass upon that question and the judgment of the board is binding until modified or reversed in the manner provided by the statute. This, we think, is well settled in the following cases: *Hanson* v. *Kittitas Reclamation Dist.,* 75 Wash. 297, 134 Pac. 1083; *Phipps* v. *Medford,* 81 Or. 119, 158 Pac. 666; *Cullen* v. *Glendora Water Co.,* 113 Cal. 503, 39 Pac. 769; *Oregon Short Line R. R. Co.* v. *Pioneers' Irr. Dist.,* 16 Idaho, 578, 102 Pac. 904; *Knowles* v. *New Sweden Irr. Dist.,* 16 Idaho, 217, 101 Pac. 81; *Board of Directors* v. *Tregea,* 88 Cal. 334, 26 Pac. 237; *Smith* v. *Progressive Irr. Dist.,* 28 Idaho, 812, 156 Pac. 1133; *Nile Irr. Dist.* v. *Gas Securities Co.,* 248 Fed. 861; *Wilder* v. *Board of Directors, etc.,* 55 Colo. 363, 135 Pac. 461.

This brings us to the crux of the case, and that is this: Does the statute give to a dissatisfied land owner, in addition to the right of an appeal wherein the determination of the board of supervisors including his land in a drainage district may be retried *de novo,* also give to him in the proceeding for the confirmation of the bonds of the district, the right

to have that question tried *de novo* as was undertaken in the lower court? In other words, may the land owner ignore the proceedings before the board of supervisors, refuse or neglect to appeal from the board's determination that his lands would be benefited by the drainage system proposed, and await until the board of directors of the drainage district has submitted the question of issuing bonds to the voters in the district, obtained authority from them to issue the bonds, and taken all steps provided in the drainage act toward placing the bonds upon the market, and then when a proceeding is instituted to determine the validity of the bonds, for the first time come into court, and by his pleadings and evidence show that his land could not be benefited by the drainage system proposed? Unquestionably the legislature could give the land owner this right if it chose to do so. Just why he should have so many chances, or why he should be permitted to delay the interposition of his objections, to his lands being included in the drainage district, until a proceeding was instituted to determine the validity of the bonds of the district, rather than at the earlier dates when the proposition of organizing the district by the board of supervisors, or the right of appeal from their determination was available, we do not understand. Nor is it hardly within the bounds of reason to believe that the legislature intended that the land owner might defer questioning the validity of the order of the board of supervisors including his lands in the district until the validity of the bonds of the district was brought in question in the confirmatory proceedings.

We think the meaning to be attached to the confirmatory proceeding provided for in paragraphs 5484 to 5488 is that the court should review the regularity, legality and correctness of what was done before the

board of supervisors, or if an appeal was taken, what was done before the court, including the regularity of the proceedings in voting and issuing bonds. If the evidence before the board or on appeal was preserved, in the confirmatory proceedings, the court would ex- amine it to determine its competency and relevancy and to see if it supported the determination of bene- fits to lands within the district or not. Indeed, the court might in this proceeding review all orders, rul- ings and determinations of every nature and kind the evidences of which had been preserved before the board of supervisors, or in the trial on appeal. This precludes the idea that the court would try the issues involved *de novo*. The provisions of the Washington statute with reference to the organization of irriga- tion districts and the confirmatory proceedings on bond issues, except that there is no appeal provided for from the board of county commissioners, is very much like our drainage statute. In *Re Board of Di- rectors of Wenatchee Reclamation Dist.*, 91 Wash. 60, 157 Pac. 38, the court had before it the extent or limits of the confirmatory proceedings as provided by the Washington statute. It was there said:

"Since the power of the court in the confirmatory proceedings is to 'judicially examine, approve and confirm' the proceedings of the board of county com- missioners in case it shall find them in conformity with the statutes, and to declare them illegal in whole or in part in case it finds that they are not so, it seems to us to follow that the right of review is con- fined to the record made by the board. This does not mean that the findings of fact made by the board may not be reviewed in any manner in the reviewing court, but means that such findings can be reviewed only upon the evidence introduced before the board. In other words, if the person controverting the facts which the board must find in order to lawfully estab- lish the district wishes to have the facts reviewed in the confirmatory proceedings, he must cause the

evidence introduced before the board to be preserved and brought before the superior court, as other parts of the board's records are brought before it. To contend otherwise is to contend that the party objecting may ignore the board entirely and present his evidence in the superior court only; a proceeding which will result in a second independent trial of the facts necessary to be found in order to justify the establishment of the district, on evidence not before the board, and on which the board might have refused to establish the district had it been presented to it. It is our conclusion that the statute does not contemplate such a retrial, and for that reason that the ruling of the court is without error."

We think this view of the law is the reasonable, logical and sensible view.

The purpose of the confirmatory proceedings is not to determine whether the organization of the drainage district was legal or not, but to determine the validity of the bonds of the drainage district and to procure a judgment of the court establishing the validity of the bonds, that on the faith thereof the district might realize from the purchasing public the highest possible price. Primarily it is for the benefit of the drainage district and not for any individual land owner therein. *Board of Directors, etc., v. Tragea, supra; Crall v. Board of Supervisors,* 87 Cal. 140, 26 Pac. 797; *Nampa etc. Irr. Dist. v. Brose,* 11 Idaho, 474, 83 Pac. 499; *Progressive Irr. Dist. v. Anderson,* 19 Idaho, 504, 114 Pac. 16.

That the organization proceedings of a drainage district, including the hearing before the board of supervisors and the appeal from their decision, if one be taken, are in a marked degree different from the confirmatory proceedings to validate the bonds of the district, is quite plain. Take, for instance, the form of judgment on appeal from the order of the board of supervisors organizing a drainage district

to the superior court. The law directs the framing of the judgment in such a manner as to preserve the drainage district, if possible. The boundaries of the district may be changed by excluding from it lands not benefited, without destroying the district. Since the contest in the· confirmatory proceedings is "to determine the validity of any such bonds," the judgment necessarily would be confined to that point. The statute gives the court in such proceedings no supervisorial or corrective powers over the organization of drainage districts.

From a careful consideration of the whole drainage act, we are compelled to come to the conclusion that the question of benefits to lands included in drainage district No. 4 could not be litigated in the proceeding to contest the validity of the bonds of such district; that a land owner dissatisfied with the inclusion of his lands in such district must make his objections before the board of supervisors upon the hearing of petition to organize the district or upon appeal to the superior court as provided in the statute. It follows that the opinion heretofore rendered by this court must be modified to correspond with this announcement of the law, and that the judgment of the lower court should be affirmed.

An examination of our former opinion will disclose that our holding to the effect that the land owner might postpone the question of benefits to his land, until the proceedings to validate the bonds of the district was instituted, was based entirely upon the opinion of the Supreme Court of the United States in *Myles Salt Co.* v. *Board of Commissioners,* 239 U. S. 478, L. R. A. 1918E, 190, 60 L. Ed. 392, 36 Sup. Ct. Rep. 204. That case was one to restrain the sale of the plaintiff's land to satisfy a tax levied by the drainage district. The question was presented upon the pleadings and was as to whether the complaint

stated facts entitling the plaintiff to the injunction. As was said in *Phipps* v. *City of Medford, supra,* commenting on the Myles Salt Company case:

"Nothing appeared in the pleading to indicate as here appears, either that the question of benefit to or taxability of the property of plaintiff had been heard or determined by any lawfully established tribunal, or that an opportunity had been given for that purpose. On the demurrer the allegations necessarily were taken to be true as alleged. If nothing else appeared, the demurrer was properly sustained. But the present case is widely different. Written large on the amendment is the provision that notice shall be given, and time fixed for considering protests, and that the council shall hear and determine all objections to the proposed tax."

Of course, it is necessary that the land owner have an opportunity at some stage of the proceedings to contest the question of benefits. In other words, he is entitled to his day in court. It seems under the local laws involved in the Myles Salt Company case the land owner was given no opportunity to appear upon the organization of the drainage district or to appeal from the determination of the police juries of the parish in which the drainage district was situated nor otherwise until the tax levy upon his land was made by the drainage district. That being true, the principle of law there announced has no application in the present case.

It appears that the board of directors of drainage district No. 4, in its original resolution, directing the president and secretary of the board to prepare and have printed or lithographed the bonds of said district, made the due date one year earlier than the law provided. At a subsequent meeting this error having been discovered, another resolution was passed directing said officers to have the bonds printed so that the due dates would comply with the

law. These facts were made to appear in the pleadings, the appellants insisting that the discrepancy was fatal to. the validity of the bonds. They urge the point at this time. By paragraph 5488 the court is admonished to "disregard any error, irregularity or omission which does not affect the substantial rights of the parties to such action or proceeding." The error in the due dates of the bonds was at most clerical and its correction by inserting the date fixed by the statute could not have harmed anyone. Paragraph 5454, Civ, Code.

Another question urged upon the attention of this court by both the appellees and appellants, but which was not discussed in the former opinion is as to the effect of chapter 57, Laws of 1917, entitled "An Act to Supplement Chapter 5, Title 55, Civil Code, Revised Statutes of the State of Arizona, 1913, entitled 'Drainage Districts,' by Providing for an Alternative System of Levying and Collecting Assessments and Taxes for the Purpose of Such Districts According to Benefits." We have never considered that chapter 57 has anything to do with the question involved in this case. It does not purport to repeal the Drainage Act of 1913. Its whole tenor and purpose was to preserve that act in its entirety, but at the same time to provide for an alternate system of assessments according to benefits. As to whether chapter 57 violates section 6 of article 9 of the Constitution or whether it is an unconstitutional delegation of legislative power to private parties, as suggested by counsel, are both, as we conceive it, academic questions at this time.

We want to say that the distinguished jurist who wrote the former opinion, in his lifetime and when the motion for rehearing was presented, had come to doubt very seriously the correctness of that opinion in the respect indicated. He had indus-

triously run down all the authorities, had found, analyzed and applied to the facts of the case the decision in the Wenatchee Reclamation District case, and many other cases. The writer feels that he is in his feeble way announcing the rule that Mr. Justice BAKER would have announced, in a very much clearer and more convincing way, had he lived to do so.

The judgment of the lower court is affirmed.

McALISTER and FLANIGAN, JJ., concur.