DRAKE, APPELLANT, v. SCHOREGGE, COUNTY TREASURER, ET AL., RESPONDENTS.

(No. 6,409.)

(Submitted April 10, 1929. Decided May 22, 1929.)

[277 Pac. 627.]

*Mr. Louis P. Donovan,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. Jesse G. Henderson* and *Messrs. Foot, MacDonald & Foot,* for Respondents, submitted a brief; *Mr. J. H. Foot* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiff to obtain an injunction restraining the defendant county treasurer from advertising or offering for sale, or selling or attempting to sell, plaintiff's land, particularly described, in satisfaction of taxes levied by the intervener, Toole county irrigation district. Toole county irrigation district filed a complaint in intervention, as did also George McKaig, Donald Myrick, T. C. Elliot and Thor Jorgenson, on behalf of themselves and other persons similarly affected. A general demurrer was filed to the complaint, which was by the court sustained, and, plaintiff refusing to plead further, judgment was entered dismissing the action, with costs awarded to the defendants and the interveners. The appeal is from the judgment.

The only question involved is whether the court erred in sustaining the demurrer to the plaintiff's complaint. It is alleged that on or about the fourth day of September, 1919, the district court of Toole county, in the matter of the petition for the organization of an irrigation district in and for the county of Toole, duly made and entered an order therein, allowing the petition and setting forth its findings, to the effect that the petition substantially complied with the law relating to the organization of irrigation districts, and that its allegations are sustained by the evidence. Thereby the proposed district was regularly established according to law, comprising, with the plaintiff's lands, a total of 282,191.63 acres. No appeal was taken to the supreme court from such order or judgment creating the district, and it therefore became final. It is then further averred that between the fourth day of September, 1919,

and the eighteenth day of May, 1922, in order that the irrigable area of the district might be determined, the commissioners of Toole county irrigation district caused a careful topographical survey and map to be made of all of the irrigable land in the district, from which it was ascertained that no part of the plaintiff's lands was irrigable, whereupon the irrigation commissioners duly made an order and resolution on the eighteenth day of May, 1922, finding that the irrigable area within the irrigation district was 147,985.1 acres, and that the lands of plaintiff described, and the whole thereof, were nonirrigable, and ordered that no tax or assessments should be levied upon or against the nonirrigable land, nor any part thereof, and that no lien for any indebtedness thereafter created should attach thereto, a full, true, and correct copy of which resolution is attached to the complaint as Exhibit ''A,'' and made a part thereof; that at all times since the eighteenth day of May, 1922, such resolution has been in full force and effect, and that at all times since that date the best available information possessed by the commissioners has shown clearly and without contradiction that none of the lands of plaintiff were irrigable, and the whole thereof, to be nonirrigable, and that they are in fact entirely nonirrigable. And further it is alleged, notwithstanding, ''that on or about the 26th day of August, 1926, the said commissioners of said Toole county irrigation district, in meeting duly assembled, adopted an alleged resolution purporting to levy a tax against all of the nonirrigable land of said district, as well as against the irrigable land of said district, a full, true, and correct copy of which said resolution is hereby attached, marked Exhibit 'B,' and hereof made a part.''

Upon reference to Exhibit ''B'' of the complaint, it is found that the purpose of the assessment complained of was to create a sinking fund to pay off a bonded indebtedness of the district aggregating $238,000, payable according to the terms of the bonds, January 1, 1930, which bonds ''constitute a lien on all the land of the Toole County irrigation district as it was orig-

inally created, and that all of the irrigable acreage, as well as all of the lands heretofore determined by resolution to be non-irrigable, are liable and taxable for the purpose of payment and retirement of the said outstanding bonded indebtedness.''

It is the contention of the plaintiff that, because of the adoption by the irrigation commissioners of the resolution of May 13, 1922, Exhibit ''A'' to his complaint, declaring certain lands embraced in the district nonirrigable, including his lands, that the irrigation district commissioners could not afterwards, as attempted, shown by Exhibit ''B,'' lawfully levy a tax on his lands to pay such bonded indebtedness. However, the county treasurer contends that, if the plaintiff's lands, ''or any of the lands so declared to be nonirrigable, were subject to the lien of the bonds at the time of the determination of this irrigable area, no act of the commissioners could relieve them of this lien, or save them from taxation to raise the funds with which to pay the bonds.'' The complaint does not show the date when the bonds were issued; however, counsel for the respondents argue that there was an existing contract between the district and the holders of the bonds that the lands embraced in the district as originally organized, and all of them, should be held as security for the payment of the bonds, and therefore the district will not be permitted to repudiate its contract. And counsel for the appellant states that the question presented for determination in disposition of this appeal is whether the irrigation district may lawfully levy a tax upon nonirrigable land within the district in payment of an indebtedness incurred prior to the time the land was found to be nonirrigable. In order to so construe the complaint, plaintiff's counsel must have been satisfied with the recital in the resolution of the board of August 26, 1926, Exhibit ''B,'' to the effect that the bonded indebtedness referred to constituted ''and is a lien on all of the land of the * * * district as it was originally created.'' However, the plaintiff having pleaded the existence of the bonds, it devolved upon him to further allege, if such was the fact, that the indebtedness involved was incurred after the order made excluding his lands

from the district. Accordingly, in order to finally dispose of the case, the indebtedness will be by us treated as having been incurred prior to the time the lands of the plaintiff were found to be nonirrigable and excluded from the district. This course will result in disposition of the case on the merits, as seems to be the desire of all parties in interest.

Our district irrigation laws appear to be in a maze of entanglements and confusion in consequence of many amendments, repeals, and re-enactments by the legislative assembly from the year 1907 down to 1929. We shall endeavor to confine ourselves, so far as pertinent, to the law applicable when the district was created (1919), the date of the order of exclusion of nonirrigable lands (1922), and the time of the attempted levy of the tax on plaintiff's lands (1926).

By the statute it is provided that "a majority in number of the holders of title or evidence of title to lands susceptible of irrigation from the same general source, and by the same general system of works, such holders of title  *  *  *  also representing a majority in acreage of said lands, may propose the establishment and organization of an irrigation district under the provisions of this Act.  *  *  *  When so organized, such district shall have the powers conferred, or that may hereafter be conferred, by law upon such irrigation district." (Chap. 116, Laws 1919; sec. 7166, Rev. Codes 1921.) The order of the district court establishing the district upon the petition of the owners of land embraced within the proposed district "shall be conclusive upon all the owners of lands within the district that they have assented to and accepted the provisions of this Act, and shall be final unless appealed from  *  *  *  within sixty days from the day of entry of such order." (Id., 7169.) And "every irrigation district so established hereunder is hereby declared to be a public corporation for the promotion of the public welfare, and the lands included therein shall constitute all the taxable and assessable property of such district for the purposes of this Act." (Id., 7169.)

For the purpose of carrying out the provisions of the Act, the board of commissioners of any organized irrigation district are empowered to issue negotiable bonds of the district, "and provide for the levy of a special tax or assessment as in this Act provided on all the lands in the district for the irrigation and benefit of which said district was organized and said bonds are issued, * * * sufficient in amount to pay the interest on and principal of said bonds when due." (Sec. 7210, Rev. Codes 1921, enacted by Chap. 116, Laws 1919, re-enacted by Chap. 157, Laws 1923.) By the provisions of the section last quoted it is made the duty of the commissioners, when bonds of the district are authorized, to "provide for * * * a special tax or assessment * * * on all * * * lands in the district for the irrigation and benefit of which said district was organized." All bonds issued pursuant to the law "shall be a lien upon all the lands originally or at any time included in the district for the irrigation and benefit of which said irrigation district was organized and said bonds were issued, * * * and all such lands shall be subject to a special tax or assessment for the payment of the interest on and principal of said bonds, * * * and said special tax or assessment shall constitute a first and prior lien on the land against which levied, to the same effect and with like force and effect as taxes levied for state and county purposes." (Chap. 116, Laws 1919; sec. 7213, Rev. Codes 1921.) And "all bonds and the interest thereon issued hereunder * * * shall be paid by revenue derived from a special tax or assessment levied as hereinafter provided upon all the lands included in the district; * * * and all the lands in the district *at the time said bonds are issued* * * * shall be and remain liable to be taxed and assessed for the payment of said bonds and interest." (Chap. 145, Laws 1915; sec. 7232, Rev. Codes 1921.) "The boundaries of any irrigation district organized hereunder may be changed in the manner herein prescribed: Provided, such change of the boundaries of the district shall not impair or affect its organization or its rights in or to property, or any of its rights or privileges of whatsoever kind or nature, *nor shall it affect,*

*impair, or discharge any contract, obligation, lien, or charge*
*for or upon which it was or might become liable or chargeable*
*had such change of its boundaries not been made.''* (Chap.
96, Laws 1919; sec. 7188, Rev. Codes 1921.) "And the num-
ber of irrigable acres in each such tract as so determined *shall*
*not be diminished*, but may be increased during the term for
which any such bonds may be issued or until the bonds shall be
liquidated in full." (Sec. 7235B, Rev. Codes 1921, enacted
by Chap. 157, Laws 1923.)

"The statute consists of numerous sections, all relating to the
same general subject—the creation, organization, govern-
ment, and extension of irrigation districts—and it is an ele-
mentary rule of statutory construction that, in ascertaining the
intention of the Legislature, the statute must be considered in
its entirety. The reason for the rule is manifest. A statute is
passed as a whole, and not in parts or sections, and the division
into sections is merely a matter of convenient reference. (25
R. C. L. 1009.)" (*In re Crow Creek Irr. Dist.*, 63 Mont. 293,
207 Pac. 121.)

And, as noted from the enactments above set forth, the
district after organization becomes absolute as an entity
after its creation where no appeal is perfected, and it has the
power of issuing bonds against lands embraced in its confines,
for the purpose of carrying out the provisions of the Act. The
order of the court establishing the district is conclusive upon
the owners of land embraced within the district "that they
have assented to and accepted the provisions" of the Act.
Presumably the bonds were regularly issued, there being no
allegation to the contrary. "It is now too late to question the
validity of the proceedings, either preliminary to the order of
the court establishing the district, or those had for the purpose
of authorizing the board of commissioners to issue bonds. By
section 4 [Laws 1909, Chap. 146, now sec. 7169, Rev. Codes
1921] the finding and order of court establishing the district
is made conclusive upon all the owners of lands included in it,
and final unless an appeal be taken therefrom to this court

within sixty days after its entry. Section 41 [sec. 7211, Rev. Codes 1921] requires the board, within ten days after making its order directing the issuance of bonds, to present a petition to the district court for confirmation and ratification of its proceedings in connection with, and anterior to, its order directing the issuance of the bonds. Notice must be given and a hearing be had by the court of all persons whose rights may be affected by the issuance and sale of the bonds. The statements in the petition may be put in issue. The issues presented, if any, must be tried as issues in an ordinary action. The final judgment or order is conclusive, unless an appeal be taken to the supreme court within ten days. The time during which an appeal may be taken from the orders in question having expired, neither of them, in the absence of allegation and proof of fraud procuring it, can now be called in question.'' (*O'Neill* v. *Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283.)

The circuit court of appeals for the ninth circuit, in the recent case of *Tomich* v. *Union Trust Co.*, 31 Fed. (2d) 515, which was an action whereby the plaintiff, Tomich, sought a decree enjoining the collection of taxes imposed on his lands for the payment of bonds or warrants issued by a Montana irrigation district because of the fact that his lands were irrigated, and therefore not benefited by the creation of the district. Plaintiff's bill having been dismissed, the plaintiff appealed from the judgment. The judgment was affirmed, and in so doing that court referred to the decision of this court in *O'Neill* v. *Yellowstone Irrigation District, supra,* and said: ''The general rule under statutes for the organization of irrigation districts is that an objection that land proposed to be included in the district should not be included must be made by the land owner at the time the district is formed, where a hearing is afforded for that purpose. (*Oregon Short Line R. R. Co.* v. *Pioneer Irr. Dist.*, 16 Idaho, 578, 102 Pac. 904; *In re Bonds of Drainage Dist. No. 4*, 22 Ariz. 48, 205 Pac. 806; *Wilder* v. *South Side Irr. Dist.*, 55 Colo. 363, 135 Pac. 461; *American Falls Reservoir Dist.* v. *Thrall*, 39 Idaho, 105, 228 Pac. 236;

*Jackson* v. *Bonneville Irr. Dist.,* 66 Utah, 404, 243 Pac. 107; *Yellow Jacket Irr. Dist.* v. *Pleasant Valley Ranch,* 78 Colo. 543, 243 Pac. 635.)''

After the organization of the district, the provisions of the ██ ██ Act and rules of procedure should be given most liberal construction, in order that the purpose of the Act may be carried out. (*In re Gallatin Irr. Dist.,* 48 Mont. 605, 140 Pac. 92.) The bonds having been regularly issued, the subsequent determination made of the irrigable acreage included in the district is not ''allowed to alter or reduce in any manner the acreage subject to the lien of such bonds, in principal or interest, or the taxes or assessments to meet the interest or principal thereof.'' Thus authority to levy the assessment on the plaintiff's lands arose from the fact that they were included in the district as organized, and when the bonds were issued. Therefore they constitute a part of the security pledged by the district for the payment of the bonds. The security may not be diminished. No change in the boundaries of the district as organized shall impair or affect its organization, nor shall it affect, impair, or discharge any contract, obligation, lien, or charge for which it was liable before such change.

It is evident that the commissioners so construed and applied the law correctly, as the resolution adopted May 18, 1922, finding the plaintiff's lands, with others included in the district as organized, *nonirrigable,* provided that *''hereafter, in levying taxes* and special assessments upon the lands in said district for any purpose whatever,'' the same shall be determined by the irrigable area only; further, ''that all lands described in the order of the court organizing this district, which are not in this resolution described, contain no irrigable land, *and are no longer subject to taxation.''*

Learned counsel for the plaintiff contends that the plain- ██ tiff's lands are not subject to the tax, for the reason that by the provisions of section 7235A of the Revised Codes of 1921 (Chap. 157, Laws of 1923), re-enacting in substance like legislation contained in section 7235 of the Revised Codes

of 1921, enacted by Chapter 148 of the Laws of 1921, "no special tax or assessment shall be levied against any forty-acre tract, or fractional lot, * * * found by said board to contain no irrigable land; nor shall any lien created *after* the order of determination herein provided for attach to any such tract, nor shall the owner, or owners, of any tract or tracts have any vote or votes in any proceeding or election under the provisions" of the Act, "or any amendment thereof, or · Act supplementary thereto, after the making of such order, unless his said land, or a portion thereof, be found by said board to contain an area irrigable from the works, or proposed works, of said district: * * * Provided, however, that nothing in this section shall be deemed or construed to affect or impair the lien of any bonds issued by the district." It is argued that the Act contemplated that only irrigable land would be included within the district, and required the court to exclude "any lands which will not, in the judgment of the court, be benefited by irrigation by means of said system of works." (Sec. 7169, Rev. Codes 1921.) It is clear to us that the provisions of section 7235A have reference to such bonds as are issued after the order of the board shall have been made determining the particular lands within the district which are actually irrigable. Bonds issued create a general indebtedness against the district, in the sense that all lands therein are taxable for the payment thereof with interest, until the entire indebtedness is fully paid. (*Cosman* v. *Chestnut Valley Irr. Dist.*, 74 Mont. 111, 40 A. L. R. 1344, 238 Pac. 879.) When read in connection with all the other provisions of the statute, it is clear to us that this section has reference only to tax levies made to meet and pay bonds or other obligations of the district incurred for the operation and maintenance of the district, *after* the irrigable area of the district has been determined. Manifestly it cannot have reference to bonded obligations of the district incurred prior to the order made excluding non-irrigable lands from the district as organized. Nothing in the

law "shall be deemed or construed to affect or impair the lien of any bonds issued by the district."

The clear legislative purpose and intent not to relieve lands included in the district as organized is made perfectly plain by the provisions of Chapter 54, Laws of 1923, wherein it is further provided "that if any bonds have been issued with the approval, and pursuant to confirmation by the court, then no proceeding for the determination of the acreage shall be allowed to alter or reduce in any manner the acreage subject to the lien of such bonds, in principal or interest, or of the taxes or assessments to meet the interest or principal thereof, while such bonds or the interest thereon are unpaid in whole or in part; but such proceeding may still be allowed to correct or determine acreage subject to taxes or assessments for *maintenance and current expenses,* and in so far as the latter only are to be affected."

A bond issue previous to a determination of the particular lands to be benefited constitutes a general obligation resting upon all the lands originally included in the district (*Cosman* v. *Chestnut Valley Irr. Dist., supra; Clark* v. *Demers,* 78 Mont. 287, 254 Pac. 162), which may not be avoided by a subsequent determination that certain of the acreage included is unirrigable.

Accordingly, since the district was regularly organized including the plaintiff's lands, and the bonds were by the district duly issued according to the law before the order of exclusion of plaintiff's lands as nonirrigable, they are liable for their just proportion of the tax levied on the lands of the district, as originally established in payment of such bonds. Had the bonds been issued after the order of exclusion the case would be wholly different. Undoubtedly the bonds in question were issued in order to liquidate the preliminary expense incident to surveying the topography of the district, making maps and plats, and general engineering work required to determine the most advantageous point of obtaining a water supply, and the lands which would benefit by the

project. Doubtless it was impossible to make accurate determination of the nonirrigable area until the completion of such preliminaries, and the plaintiff's lands, having been lawfully included in the district as organized, may not now escape their just proportion of the cost incurred, represented by the bonds outstanding and unpaid, as is made most plain from a reading of the various legislative enactments.

Therefore, since plaintiff's lands were subject to the tax, the demurrer to the complaint was properly sustained, and the judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, FORD and ANGSTMAN concur.