## JUDITH BASIN IRR. DIST. v. MALOTT et al.

No. 6878.

Circuit Court of Appeals, Ninth Circuit.

Oct. 15, 1934.

L. A. Foot, Atty. Gen., of Montana, C. E. Baker, Co. Atty., of Lewistown, Mont., E. K. Cheadle, of Lewistown, Mont., and L. V. Ketter and John C. Erickson, both of Helena, Mont. (John G. Brown, of Helena, Mont., of counsel), for appellant.

Gunn, Rasch, Hall & Gunn, of Helena, Mont., for appellees.

Dana E. Brinck and Albert Olsen, both of Spokane, Wash., amici curiæ.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court of the United States directing the issuance of a writ of mandate. An action had been brought in that court to secure judgment against the Judith Basin Irrigation

District upon certain outstanding bonds issued by the district which were issued and sold in 1921. A judgment had been rendered in that action. The petition for writ of mandamus was filed in that action for the purpose of enforcing the judgment which was rendered on the 19th of October, 1931 in the sum of $77,716. It is alleged in the petition that the district had no property subject to execution and that there are no funds in the county treasury of Fergus county in which the irrigation district is situated applicable to the payment of the judgment. It is alleged that the petitioners and judgment creditors are the owners of all the bonds of the district excepting four, numbered 21, 27, 39, and 119 for $1,000 each. The judgment was for the principal of the first 40 bonds, to wit, $40,000, and for the unpaid coupons, excepting bonds numbered 21, 27, and 39. The judgment does not cover bonds to 160, which the petitioners alleged they now own. The bonds, by their terms, accrue at different times, ten or twelve bonds, as the case may be, being payable annually until January 1, 1940. It would follow that since the rendition of the judgment other bonds now owned by the plaintiff in that action have matured and other interest coupons have matured upon the bonds which are not yet due. The county commissioners are acting ex officio as commissioners for the irrigation district. All the property within the limits of the irrigation district, amounting to 4,253.35 acres, has been sold at tax sales by the county treasurer of said county to Fergus county for

" * * * delinquent taxes or assessments levied by said irrigation district and delinquent general taxes, together with penalties and interest, constituting liens thereon, and certificates of tax sales were issued to said county by said treasurer and filed in his office.

"13. That the time for redemption from said tax sales and all thereof having expired, and no part of said lands having been redeemed, tax deeds were issued by said county treasurer to said Fergus County, conveying to said county all of said lands, and said county is now in possession and holding title to all of said lands by virtue of said tax deeds."

It is alleged that the board of county commissioners have fixed the " * * * fair market value of said land and parcels thereof for the purpose of such sale upon the assumption that said lands are not subject to future irrigation district taxes or assessments for the payment of any part of the principal or interest of said bonds, and threaten to and will, unless otherwise commanded by this court, notify and advise the purchaser, or purchasers, of the lands at said sale that the said lands will be sold and conveyed by said county free and clear from any and all liability to future taxation for the payment of any part of the principal or interest of said bonds."

It is further alleged that the price fixed by the county commissioners is less than the amount due and to become due upon the bonds by over $50,000.

It is alleged that the county commissioners have advertised and offered said lands for sale as provided by section 2235 of the Revised Codes of Montana of 1921, as amended by section 3, c. 85, Laws of Mont. 1927. That section provides that the sale shall not be made for less than the market price.

It is further alleged that the county commissioners " * * * claim and assert that the purchaser, or purchasers, of said lands when so sold will obtain title thereto free and clear from any and all liability for future taxes or assessments to pay the principal and interest of said bonds which may remain unpaid after the distribution and application of the proceeds of said sale as provided in said section 2235 as amended."

That section (2235) was subsequently amended by the Legislature of Montana in 1929 (chapter 162) by providing that the sale should be made to the highest bidder, but the Supreme Court of Montana, in State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 296 P. 1, held that this amendment was unconstitutional, in that it violated the contract rights of the bondholders of irrigation districts because it impaired the obligation of the contract between the district and the bondholders. They are further "commanded, in the event a levy of the taxes or assessments shall not be made for said Irrigation District by the Commissioners of said District for any year, to ascertain the total amount necessary to be raised for all purposes of said district, and make a levy for that year for said district as provided in chapter 59 of the Laws of Montana, 1931, and furnish the county clerk and recorder of said county with a list of said lands and the amount of the taxes or assessments, as required by section 7240 of the Revised Codes of Montana, 1921, until the judgment in this action and said bonds are fully paid."

The basic question in this case is as to the nature of the obligation of the district upon the bonds issued and sold by it. At the

time of the issuance of the bonds there were no decisions by the Supreme Court of Montana as to whether or not the bonds were the general obligation of the district. Later the matter came before that court in Cosman v. Chestnut Valley Irr. Dist., 74 Mont. 111, 238 P. 879, 40 A. L. R. 1344, and in Clark v. Demers, 78 Mont. 287, 254 P. 162, and the case of Drake v. Schoregge, 85 Mont. 94, 277 P. 627. In these cases it was held that the bonds of the irrigation district were general obligations of the district. Later, however, the matter was again presented to the Supreme Court of Montana in State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 296 P. 1, supra. The Supreme Court of Montana expressly overruled its previous decisions and decided the bonds were not the general obligation of the district, but merely a charge against the lands within the district, and that each tract of land was only liable for its proportion of the entire bonded indebtedness. It was also held in that case that when the land had been sold for taxes and conveyed to the county by tax deed and subsequently sold to the county, as provided by law, that the purchaser acquired the lands free and clear from any lien of the bonds or any future taxation for the payment thereof. Ordinarily, it is the duty of the federal court to follow the decisions of the state court with reference to state legislation. But one of the exceptions to this rule is that when there is no decision of the state court interpreting a statute and that statute has been the basis for the issuance of obligations the statute becomes a part of the contract between the purchaser of the bond and the political corporation issuing the same and the federal courts will exercise their independent judgment in determining the proper construction of the state statute regardless of subsequent decisions of the Supreme Court of the state upon the question, leaning strongly, however, to the adoption of such interpretation if reasonably possible. This case presents a situation of that nature. At the time the bonds involved in this action were issued and sold there was no interpretation of the statute by the Supreme Court of Montana. Under these circumstances this court must exercise its own independent judgment as to the meaning of the statute under which the bonds were issued. Davenport v. Lord, 9 Wall. 409, 19 L. Ed. 704; Bolles v. Town of Brimfield, 120 U. S. 759, 7 S. Ct. 736, 30 L. Ed. 786; Folsom v. Township Ninety-six, 159 U. S. 611, 16 S. Ct. 174, 40 L. Ed. 278; Bourbon County v. Block, 99 U. S. 686, 25 L. Ed. 491; Carroll County v. Smith, 111 U. S. 556, 4 S. Ct. 539, 28 L. Ed. 517; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 S. Ct. 140, 54 L. Ed. 228.

The law of Montana authorizing the formation of irrigation districts, like that of many western states, is patterned after the Wright Act of California (St. Cal. 1887, p. 29). Tomich v. Union Trust Co., 31 F.(2d) 515. As stated by the Supreme Court of Montana in Re Crow Creek Irrigation District, 63 Mont. 293, 207 P. 121, 122: "In its general legislative plan, our statute is modeled after the Wright Law of California (O'Neill v. Yellowstone Irr. Dist., 44 Mont. 492, 121 P. 283), the constitutionality of which has been established by numerous decisions of the California court and by the decision of the Supreme Court of the United States in Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369."

See, also, State ex rel. Malott v. Board of County Commissioners, 89 Mont. 37, 76, 80, 296 P. 1, supra.

It has been uniformly held that the bonds of an irrigation district issued in pursuance of the Wright Act (St. Cal. 1887, p. 29, as amended) are general obligations of the district and this has been true in states where the state legislation has varied slightly from the provisions of the Wright Act but has been based upon it. In Rialto Irr. Dist. v. Stowell, 246 F. 294, 305, this court held that bonds issued under the Wright Act of California were general obligations of the district. We there stated: "We regard it as clear that the bonds here in question constitute a general obligation of the irrigation district to pay the principal and interest thereof as therein provided for." The Circuit Court of Appeals of the Eighth Circuit in Norris v. Montezuma Valley Irr. Dist., 248 F. 369, held that the bonds of an irrigation district organized under the laws of Colorado, patterned after the Wright Act, were the general obligations of the district.

In Noble v. Yancey, 116 Or. 356, 241 P. 335, 42 A. L. R. 1178, the Supreme Court of Oregon held that the obligations of the irrigation district were the general obligations of the district. The Supreme Court of Washington has held the irrigation district bonds issued under its statute to be the general obligation of the district. State ex rel. Clancy v. Columbia Irr. Dist., 121 Wash. 79, 208 P. 27; State v. Hartung, 150 Wash. 590, 274 P. 181. This holding of the Supreme Court of the

State of Washington has been recently affirmed by the Supreme Court of the United States in Roberts v. Richland Irr. Dist., 289 U. S. 71, 53 S. Ct. 519, 77 L. Ed. 1038.

The Supreme Court of Idaho has held that the law of Idaho authorizing the formation of irrigation districts and providing for the issuance of bonds constituted the bonds a general obligation of the district. A recent decision of the Supreme Court of California is to the same effect. Dougery v. Bettencourt, 2 P.(2d) 765, Id., 214 Cal. 455, 6 P.(2d) 499. The decision of the Supreme Court of the United States above referred to (Roberts v. Richland Irrigation District) is significant in the case at bar because it held that notwithstanding the Supreme Court of Washington had held that irrigation district bonds issued under its law were general obligations of the district, and notwithstanding the fact that these bonds were issued because of benefits expected to be derived by the lands in the district, that the issuance of general obligations of the district to pay therefor was a valid exercise of legislative power and that such legislation did not conflict with the prior decision of the Supreme Court in Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, which latter case was strongly relied upon by the Supreme Court of Montana in reaching the conclusion that the bonds of an irrigation district issued in Montana did not create a general obligation of the district but represented a special lien upon the lands of the district.

The Supreme Court of Colorado, however, has held that bonds issued by an irrigation district in that state do not permit cumulative assessments upon the lands of the district to cover delinquent assessments upon other lands in the district. Interstate Trust Co. v. Montezuma Valley Irr. Dist., 66 Colo. 219, 181 P. 123. As we have already pointed out, the Circuit Court of Appeals of the Eighth Circuit has held that bonds issued under the irrigation district law of Colorado are the general obligations of the district. There is thus a direct conflict between the decisions of the Circuit Court of Appeals of the Eighth Circuit and the Supreme Court of the State of Colorado with reference to the interpretation of the statutes of Colorado.

The Supreme Court of Utah, in Nelson v. Board of Commissioners, 62 Utah, 218, 218 P. 952, has held that bonds issued by irrigation districts incorporated under the laws of Utah are not the general obligations of the district.

The decision of the Supreme Court of the United States sustaining the validity of the Wright Act of California, Fallbrook Irr. Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369, strongly indicated, but did not decide, that the obligations of the irrigation district were the general obligations of the district. It is no doubt because of the decisions of the Supreme Court of the United States upholding the validity of the districts organized under the Wright Act that other states proceeded to enact similar legislation and were able to sell their bonds. While this fact would not change the rule which requires the federal courts to follow the state courts in interpretation of local legislation, it would be an added reason for asserting an independent judgment in cases where bonds had been purchased, not only in reliance upon reasonable construction of the statute of the state but also upon the interpretation of that statute by the Supreme Court of the United States. We conclude that the earlier decisions of the Supreme Court of Montana holding the bonds were the general obligations of the district were correct and that the later decisions holding that the bonds constituted a lien upon the lands in the district and did not constitute general obligations of the district, are erroneous.

██ The question has been so often presented to courts of last resort and so frequently passed upon that we would feel justified in merely referring to those decisions as we have done. In view of the fact, however, that we are not dealing with the general frame work of the Wright Act, but with the specific provisions based thereon which had been enacted by the Legislature of Montana, and also with the general taxing system of that state as enacted by the Legislature, and the inter-relation of these two systems of taxation, we think that further comment upon the most recent decisions of the Supreme Court of the State of Montana is desirable if not required by reason of the respect due to the decisions of the highest court of a sovereign state. As we indicated in our previous per curiam memorandum requesting further argument, the conflict between the federal courts and the state courts as to the meaning of the state statutes and the rights of the bondholders of an irrigation district organized under the laws of the state is highly undesirable and to be avoided if possible. We proceed, therefore, to a brief consideration of some of the propositions involved in the determination of whether or not the bonds were the general obligations of the district:

1. In the first place, where the Legislature authorizes a municipality to issue bonds, the bonds thus evidenced are agreements to pay certain amounts therein specified by the municipality to the holder of the bond and are on their face a general obligation of the municipality. The bonds in question were issued in that form and the law clearly contemplates that they should be so issued. Authority to issue the bonds implies an authority to levy a tax to pay them.

2. It seems to us an insuperable obstacle to the declaring that the bonds constitute a lien only upon the lands of the district that no method is provided by the law of Montana for the apportionment of the debt upon the several pieces of land within the district. The only segregation provided is that which results from the imposition of the annual tax to pay interest and principal of the bonds. American Falls Reservoir Dist. v. Thrall, 39 Idaho, 105, 228 P. 236. This tax was to be levied upon the irrigable land of the district and apportioned according to the irrigable acreage and not ad valorem.

3. The bonds were sold to various individuals. The amount of the bond does not represent a lien upon any particular piece of property.

4. The bonds on their face purport to be the obligation of the district and not of any specific piece of property or of any owner of any individual piece of property.

5. The purchaser of a bond cannot enforce it against any particular piece of property nor can the owner of any particular piece of property pay the bond and thus discharge his land from the lien. The purchaser of the bond must rely solely upon the annual assessments and collection of those assessments by the public authorities.

6. The bond expressly provides for the annual levy of a tax to pay the installments of interest due upon the bond and to pay the bond itself when due. The Revised Code of Montana of 1921, § 7232, provides as follows: "Tax or assessment to pay bonds and interest. All bonds and the interest thereon issued hereunder * * * shall be paid by revenue derived from a special tax or assessment levied as hereinafter provided upon all the lands included in the district, except upon such lands as have been included in such district on account of the exchange or substitution of water under the provisions of section 7206, if any there be; and all the lands in the district at the time said bonds are issued, and all lands subsequently included which are so chargeable under the provisions of this act, shall be and *remain liable* to be taxed and assessed for the payment of said bonds and interest. * * * It shall be the duty of the board of commissioners of the district, in the order or resolution authorizing and directing the issuance of bonds of the district, mentioned in section 7210, to provide for the annual levy and collection of a special tax or assessment upon all the lands included in the district and subject to taxation and assessment as aforesaid, sufficient in amount to meet the interest on said bonds promptly when and as the same accrues, and to discharge the principal thereof at their maturity, or respective maturities. * * * A certified copy of such resolution shall be filed with the clerk of the board of county commissioners of each county in which the lands of the irrigation district lie, and the special tax or assessment therein provided for shall be levied and collected as hereinafter prescribed, and when so collected shall, by the county treasurer having custody of the funds of the district, be placed in a special fund and used solely for the payment of all amounts due or to become due to the United States * * * and for the payment of the interest on and principal of said bonds when due, *so long* as any of said bonds or the interest coupons thereto appertaining remain outstanding and unpaid. In the event that for any reason any special tax or assessment hereinabove provided for cannot or shall not be levied and collected in time to meet any interest falling due on any bonds issued hereunder, then the board of commissioners shall have the power and authority, and it shall be their duty, to provide for and pay such interest when due, either out of any of the funds in hand in the treasury of the district not otherwise appropriated, or by warrants (which may bear interest at a rate not to exceed six per centum per annum) drawn against the next district tax or assessment levied or to be levied." (Italics ours.)

It will be noted that the provision that the amounts due on the bonds should be paid from any money in the treasury of the district is inconsistent with the idea that the bonds are not an obligation of the district. In sections 7251 and 7253 of the Revised Code of Montana the bonds are referred to as an "indebtedness of the district." In section 7251 it is said, "provided, however, that this limitation shall not apply to the indebtedness for which bonds have been or may be issued as provided for by law."

148

Section 7253, supra, providing for the dissolution of the district, where "no bonded indebtedness has been incurred," provides "if, upon said hearing, the court finds that no bonded indebtedness of the district has been created, and all the expenses of organization and all other indebtedness have been paid," etc.

These statutes recognize the indebtedness as an obligation of the district. The bond issued by the district in pursuance of the statute contained an express promise by the district to pay the amount of the bond; that promise is as follows: "The Judith Basin Irrigation District, a municipal corporation of the state of Montana, organized and existing under the laws of the state of Montana, for value received, promises to pay to the bearer the sum of One Thousand Dollars ($1,000.00) in gold coin of the United States." The bond also provides:

"All of said bonds are issued under the provisions of chapter 146 of the Session Laws of 1909 of the State of Montana and of the acts amendatory thereof, and all of said bonds are secured by a lien on all of the lands included within said Irrigation District, as provided in said chapter and the acts amendatory thereof.

"All of the lands included within said Irrigation District are subject to a special tax and assessment for the payment of the interest on, and the principal of, all of said bonds, and said special tax and assessment are declared by the laws of Montana to constitute a first and prior lien on the land against which it is levied, to the same extent and with like force and effect as taxes levied for state and county purposes.

"The Board of Commissioners of said District has duly provided for the annual levy and collection of a special tax and assessment upon all the lands included within said Irrigation District sufficient in amount to meet the interest on all said bonds promptly when and as the same shall accrue and to discharge the principal amount of all of said bonds at their respective maturities, as required by the laws of Montana."

The coupon attached to the bond contains an express agreement of the irrigation district to pay the bearer of the coupon the face value thereof.

7. The payment of the bonds of earliest maturity does not release any parcel of land from the lien of the bond, and all the lands within the district, according to the terms of the bond and of the statute, are liable for the payment of the unpaid bonds.

8. At the time of the decision by the Supreme Court of Montana in State ex rel. Malott v. Board of County Com'rs, 89 Mont. 37, 296 P. 1, 15, that court was of opinion that if by reason of the sale of a portion of the lands free and clear of the lien of the bonds, the balance of the land in the district would be compelled to bear the whole burden of the payment of the balance owing for the bonds, that the law requiring this result would be "violative of both the state and Federal Constitutions, in that it amounts to the taking of private property for public use without just compensation." See Kadow v. Paul, 274 U. S. 175, 181, 47 S. Ct. 561, 71 L. Ed. 982. This view is not in accord with the most recent decision of the Supreme Court (Roberts v. Richland Irr. Dist., 289 U. S. 71, 53 S. Ct. 519, 521, 77 L. Ed. 1038) dealing with the irrigation district bonds issued by an irrigation district in the state of Washington, where it was said: "The principle applied in Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, and similar cases, has no application here. Appellant's land will be assessed to meet a general obligation of the corporation and the mere fact that the apportioned burden will exceed estimated benefits gives no color to the claim of confiscation. As pointed out in the cases cited lands may be taxed to pay for local improvements although they receive no actual benefits. Never, as the Supreme Court of the state has said, was appellant entitled to the segregation of his share of the corporate obligation. The statute did not contemplate that assessments against any tract should be limited to payment of its increased value. A general obligation was created and every tract subject thereto."

■ This case was originally argued upon the theory that a determination of the basic question as to whether or not the bonds of an irrigation district were the general obligation of the district or merely a lien upon all the lands in the district was determinative of the appeal, and that if the obligations were general obligations of the district that the order of the District Court appealed from should be affirmed. Upon an examination of the questions involved and the legislation of Montana relating thereto, we concluded that before the matter was determined we should ask the attorneys for further briefs and argument bearing particularly upon the statutory law of Montana. These briefs have been

filed and the case has been reargued. We do not deem it necessary to discuss many of the questions raised by us. One of the questions was as to whether or not the statutory law of Montana contemplated that after a deed had been issued to the county for unpaid state, county, and irrigation district taxes it was contemplated that subsequent irrigation district taxes should be levied from year to year pending the sale by the county of the lands thus acquired. On the argument it is stated that there is no decision of the Supreme Court of Montana upon that subject. In the absence of such decision it would seem that the duty to assess the tax is clearly imposed by section 7232 of the Revised Codes, which authorizes the issuance of irrigation district bonds, and provides that when the bonds are issued provision should be made for the annual levy of the tax. We also suggested that the question of the disposition of the funds derived by the sale of lands deeded to the county for state, county, and irrigation district taxes suggested by the Supreme Court of Montana in its dictum in the case of State ex rel. Malott v. Board of County Commissioners, supra, was in conflict with the statutory rule (Rev. Code Mont. 1921, § 2235, subd. 1, as amended by Laws 1927, c. 85, § 3) in relation thereto.

Having determined the basic question in favor of the appellee, for the reasons above stated, it is unnecessary to discuss this matter. We are also satisfied with the fact that there are other outstanding bonds and that these bonds were included in the order directing the sale and further assessment therefore does not impair the power of the court to enforce the rights of the petitioning bondholders. See Freeman on Judgments (5th Ed.) vol. 1, pp. 952, 957, 1098; New Orleans v. Citizens' Bank, 167 U. S. 371, 17 S. Ct. 905, 42 L. Ed. 202; Gunter v. Atlantic Coast Line R. Co., 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477.

In our request to counsel for further argument we suggested a discussion of whether or not it was an improper interference with the discretion of the Board of Commissioners to direct that the board fix a different market value of the property to be sold by them from that already fixed. We are satisfied that the writ was proper where the market value was fixed by the board because of an erroneous interpretation of the law. The market value was fixed by them upon the theory that the land in the hands of a purchaser would not be liable for the outstanding and unpaid bonds. According to the law, as we interpret

it, the land would still be subject to the outstanding bonds and the market value should be fixed with that fact in mind as directed by the trial court.

Order affirmed.